Clarence J. Henry, J.
This is a motion on behalf of the defendant City of Rochester, under rule 113 of the Rules of Civil Practice, for summary judgment dismissing the complaint herein, and for a summary declaratory judgment in favor of the defendant upon a counterclaim contained in the answer.
The action was commenced on or about November 20, 1962, and is predicated upon an alleged breach, by the city, of a contract entered into between the parties on May 23, 1961, in connection with a proposed urban renewal project in the central portion of the defendant city, occasionally and informally referred to as the “ Genesee Crossroads Area ”, The instrument was extensive and elaborate (of 16 pages duration) and many portions not deemed pertinent to the motion herein are not referred to in this opinion.
Commencing with a recitation of the desire of the city to clear, replan, reconstruct and rehabilitate the project area under the provisions of title I of the Federal Housing Act of 1949 (U. S. Code, tit. 42, § 1401 et seq.) and article 15 of the New York General Municipal Law, the contract continued with a statement that the city had applied to the Federal Housing and Home Finance Agency (HHFA) for a grant to cover the cost of formulating a plan to that end, and a statement of the intent of the city (pursuant to an appropriate further grant) to acquire all of the real property in the project area and offer it for sale at *716 public auction to a party or parties who would carry out the project, and then provided, substantially, that the plaintiff would, at its own expense, employ a planner acceptable to the city, and that both plaintiff and the city would co-operate in formulating a redevelopment plan to submit for the approval of the HHFA; that, upon such approval and after the further grant from the HHFA, the city would, by various appropriate means, acquire title to all real property in the project area, demolish all structures thereon, relocate the persons previously occupying it, make such improvements as should be required by the redevelopment plan, and then sell the area at public auction pursuant to the provisions of section 507 of article 15 of the G-eneral Municipal Law. The contract further provided that the plaintiff, upon such auction, could acquire the area for the purpose of carrying out the redevelopment plan by bidding a minimum price of $1 per square foot or a price based upon an appraised re-use value of the land, whichever was higher, or, in the event higher bids were made by other qualified bidders, the plaintiff should have the right to match the highest bid, and, upon so matching, would be entitled to receive conveyance of the area, in whole or in successive sections according to the prospective redevelopment plan. As security for its performance of the contract, the plaintiff was required to, and did, deposit with the city the sum of $150,000.
The contract was unanimously approved by the City Council of the defendant city (Ordinance No. 61-173) prior to but on the date it was executed (May 23, 1961) and, according to the complaint, the plaintiff thereafter extensively co-operated and participated with the city and its several agencies in planning for the redevelopment of the project area for approximately a year, employed a planner and a co-ordinating architect, expended a large sum of money (stated in the plaintiff’s affidavit, but not the complaint, to be $194,109.98) in connection with its activities in furtherance of the contract, and continued ready and willing at all times to perform its obligations thereunder.
On.May 10,1962, the city’s City Manager notified the plaintiff, by letter, that it had been informed by the Federal Regional Director of Urban Renewal, on May 4, 1962, that the HHFA would not approve the contract and that it therefore appeared to have been void from its beginning; and on June 1, 1962, the City Manager formally notified the defendant that it considered the contract void from its inception, for lack of such approval. The deposit of $150,000 was returned to the plaintiff, who retained it and thereupon instituted action, demanding specific performance of the contract as provided by its terms, an injunc *717 tion prohibiting the city from violating the terms of the contract and from entering into any contract with any other person for the redevelopment of the project area, and for restitution of the amounts expended by the plaintiff. The city served an answer containing a general denial, 10 affirmative defenses and a counterclaim and now further counters with the instant motion for summary judgment.
The motion is based upon grounds generally coincident with the 10 affirmative defenses set forth in the answer, although not entirely so.
The first ground has reference to the following provision of the contract: “ Section 508. This agreement shall be subject to the approval of the HHFA and the Commissioner of Housing and Urban Renewal of the State of New York. Whenever in this agreement the letters ‘ HHFA ’ are used they shall be construed to mean the ‘ Housing and Home Finance Agency of the Federal Government. ’ ”
The question as to whether the indicated approval was an essential requirement under law for the validity of a contract such as that under consideration will be taken up in the discussion of the city’s second ground (hereafter), but there is no question but what the parties could, between themselves, have agreed to and included such a condition in their contract, required or not. The city contends that the inclusion raised a condition which, in view of the May 4,1962, letter of the Regional Director of Urban Renewal, was incapable of fulfillment, and that the contract was thus rendered void. The plaintiff alleges in its complaint, and develops in its affidavits and brief, a claim of bad faith on the part of the city in failing to co-operate with the plaintiff in securing the required approvals.
This court will not pass upon the question as to whether or not bad faith on the part of the city, or its officials, existed, for it is the sole mission of the court upon a motion of this nature to decide whether issues exist — not to determine them. Due consideration of the affidavits and other papers submitted leads to the conclusion that the position of the plaintiff raises an issue on the claim of bad faith and failure to co-operate which ought to be determined upon trial; also, it is felt, an issue is created as to the intent of the parties in the inclusion of section 508 of the contract.
It is fundamental in the law of contracts that a bilateral contract invariably contains an implied and inherent requirement on both parties to co-operate with each other in achieving the aims of the agreement. Professor Samuel Williston of the Harvard Law School, revered moulder • of the contractual concepts of *718 many generations of lawyers, whose recent passing at the age of 102 is noted with a deep sense of loss, has been heard constantly to reiterate the principle, and has incorporated it in his monumental work on Contracts (Rev. ed., 1936) at section 670 as follows: “ Clearer cases of promises implied in fact are the promises implied in every bilateral contract not only not to prevent performance by the other party by which he will become entitled to receive counter-performance, but also to cooperate in such performance if cooperation is necessary from the nature of the case ”. And again at section 1293: “ Where in a written contract it appears that both parties have agreed that something shall be done which cannot effectually be done unless both concur in doing it, the construction of the contract is that each agrees to do all that is necessary to be done on his part for the carrying out of that thing.”
The principle has regularly been applied by the New York and Federal courts. It appears in New York Jurisprudence (vol. 10, § 203) as follows: “ The obligation to use good faith in carrying out what is written underlies all written agreements. Every contract implies good faith and fair dealing between the parties to it. Thus, in every contract there exists an implied covenant of good faith and fair dealing. It is implied that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract * * * In every contract there is an implied under-
taking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part. It is likewise implied in every contract that there is a duty of cooperation on the part of both parties. Thus, whenever the cooperation of the promisee is necessary for the performance of the promise, there is a condition implied that the cooperation ivill be given.” (Emphasis supplied.) (See Mansfield v. New York Cent. & Hudson Riv. Co., 102 N. Y. 205; Kirke La Shelle Co. v. Armstrong Co., 263 N. Y. 79, 87; Creamer v. Metropolitan Securities Co., 120 App. Div. 422, 429; Ryder Bldg. Co. v. City of Albany, 187 App. Div. 868; Silverman v. Goldman Realty Corp., 232 App. Div. 292; Madison Pictures v. Pictorial Films, 6 Misc 2d 302, 324; Brenner v. Schreck, 17 Misc 2d 945; Vanadium Corp. v. Fidelity & Deposit Corp., 159 F. 2d 105.)
The instant contract did not provide, as it might have, that it was not to take effect until approved by the HHFA. Thus section 508 cannot he viewed as a condition precedent, as urged by the city, but rather as a condition upon which the parties agreed — and their later actions indicated — should he fulfilled *719 by the co-operative conduct of each within a reasonable time. Performance was embarked upon by both parties and continued for almost a year without presenting the instrument for HHFA or State approval.
The refusal of the Regional Director of Urban Renewal to approve the contract was upon the ground that it was prematurely executed and “ ignored many of the prerequisites and the requirements of law, which of necessity should have been complied with by the local public agency and the redeveloper prior to entering into the agreement or understanding with respect to the disposal of the project land.” (Emphasis supplied.)
Without much doubt, it being affirmed in the city’s brief, the Regional Director regarded the considered contract as a so-called Land Disposition Contract under subdivision (e) of section 105 of the Federal Housing Act of 1949 (U. S. Code, tit. 42, § 1455, subd. [e]) and applied the requirements of that section and of sections 14-3-6 and 14-4-1 of HHFA’s Regulations in connection with land disposition contracts, to wit, requirement of submission of the redeveloper’s Statement of Public Disclosure and of the redeveloper’s Statement of Qualifications and Financial Responsibility, and others, to the request for approval. If the Regional Director was wrong in his conclusion as to the nature of the contract — and it is felt that he was — the city’s manner of presentment very probably foreclosed the plaintiff from an opportunity to convince him of his error, or, if the Director was right, no opportunity was given the plaintiff to satisfy bim by submission of the required documents. The city quite frankly concedes that its City Manager submitted solely the contract, without, as claimed by the plaintiff in its affidavit, notice to the plaintiff or a request for the above-mentioned additional documents in order that they might accompany it. This may or may not have been bad faith, conceivably postcontract inappetence, on the part of the city, or its officials — possibly, as further asserted on behalf of the plaintiff, an “ invitation ” to the Regional Director to disapprove — but the ultimate determination of the issue as to whether the city lived up to the basic requirement of co-operation to the end of securing accomplishment of the purposes of the contract can only be had upon trial. It follows that the motion for summary judgment must be denied — unless the city can display, as it has endeavored to do, convincing argument that the contract was illegal or invalid as a matter of law. These further arguments are now considered.
The second ground of the motion is, essentially, that the contract was illegal in that the provisions of subdivision (e) of *720 section 105 of the Federal Housing Act of 1949 and sections 14-3-6 and 14-4-1 of the HHFA’s Regulations were not observed before its execution. This ground, as has already been suggested, presents a faulty position. The provisions referred to are applicable, by their own terms, to contracts or understandings for the disposition of land within an urban renewal area. Subdivision (e) of section 105 of the Housing Act commences: “ Ho understanding with respect to, or contract for, the disposition of land within an urban renewal area shall be entered into * * * unless ” (emphasis supplied). Section 14-4-1 of the regulations provides: “ Disposal of urban renewal project land requires the prior concurrence of [HHFA] * * * Immediately after entering into a disposal agreement, the LPA [City here] shall notify all unsuccessful bidders” (emphasis supplied). The contract under consideration was not a contract for the disposition of land. It was executed prospectively, in contemplation of an eventual contract for the disposition of the Genesee Crossroads land, but the time for such disposition clearly had not arrived. A public auction, in accordance with the provisions of article 15 of the General Municipal Law, was provided for by law and in the contract, and at that auction the plaintiff might, or might not, emerge as the successful bidder. In the former event, and then only, would the plaintiff and the city be legally required to fulfill the above Federal provisions, and others, before a final contract for the sale of the project land could properly be consummated. The case of Town of Brookline v. Brookline Redevelopment Auth. (183 N. E. 2d 484 [Mass.]), relied upon by the defendant, is rejected as inapplicable herein for the reason that a contract for the actual disposition of urban renewal land was there involved.
A third and somewhat corollary ground of the city’s motion, not suggested in the City Manager’s letters voiding the contract, is that the contract was invalid because it was not executed with the prior approval of the State Commissioner of Housing and Community Renewal, under the provisions of section 1-6 (17) of the regulations of that department. That section, however, simply provides that certain requirements must be fulfilled before receiving a State grant of funds, including the filing of “project land sale and development contracts”. Here, as in the case of Federal approval, the time has not yet arrived, for it is yet to be determined as to whether the public auction will reveal the plaintiff as the redeveloper.
The fourth ground relied upon by the defendant is that the considered contract was invalid owing to its having been executed *721 prior to the adoption of an urban renewal plan, in claimed violation of article 15 of the General Municipal Law. An examination of that article reveals no prohibition concerning a contract of the nature of the one here in question. To repeat, the contract herein was not one involving disposition of renewal project land. It was preliminary and preparatory to such a disposition contract, and contemplated co-operation in developing a redevelopment plan which, then, under article 15, would require adoption and approval by the proper authorities before any contract of disposition of the project lands to the plaintiff, if it was successful in the necessary public auction, could be entered into.
The fifth ground of the motion is that the contract is indefinite and uncertain. The first objection hereunder is that the “ minimum price was left for determination by one of the parties ”— an incorrect conclusion for sections 203 and 204 of the contract clearly establish the sum of $1 per square foot or the first appraised re-use value of the square footage as the minimum price. The second objection is that the time of the auction was not established — which of course it could not be until, as required by section 201, the redevelopment plan had been formulated, adopted and approved, the land cleared, persons thereon relocated and other preliminary obligations on the part of the city had been fulfilled. The third objection is that the time for conveyance of the project land is not established. Section 206 of the contract provides for conveyance following the auction — if the plaintiff is successful thereat. The time of conveyance is hinged upon the time of the auction which, as above indicated, was impossible of precise determination at the time the contract was executed. In each instance the law will imply the requirement of performance within a reasonable time after the preliminary matters have been accomplished. The fourth objection is that “ requisite improvements and other terms and conditions were left for later determination by one of the parties ”, and is answered by the fact that such matters are obviously to be governed by the redevelopment plan, the formulation of which was a prime objective of the contract. The fifth, and last, objection is that no certainty exists that Federal and State aid will be forthcoming or that requisite zoning changes will be made. The question as to whether Federal or State aid eventuates is a matter beyond the final control of either party to the contract, is a risk that both mutually undertook, which, impliedly, each agreed to co-operate with the other in meeting. Section 210 provides for rezoning by the city to conform to the redevelop *722 ment plan and it would be expected that the city, if determined to be bound by the contract, would be required by law to follow through.
The last ground of the motion (set forth as an affirmative defense in the answer, and advanced on the oral argument, but not included in the city’s brief) is that the plaintiff, by receiving and retaining its $150,000 security deposit following the City Manager’s repudiation of the contract, abandoned and rescinded the contract and released the city from all claims thereunder. On this contention it is clear, from the letters directed to the city on behalf of the plaintiff on May 20, May 31 and June 5, 1962, that the return of the deposit was accepted under lively protest and with repeated demands that the city respect its obligations under the contract. It would seem that this position sharply negatives the claim of abandonment, or unilateral rescission on the part of the plaintiff, and as the recognized requirements of a release or an accord and satisfaction were lacking, the city’s position on this ground is untenable. The plaintiff simply received, not sufficient consideration, but its own money — under protest. At the very least, an issue exists as to the effect of the deposit return.
As no satisfying demonstration that the considered contract was invalid or illegal has been presented, and as issues of fact have been raised by the pleadings and the affidavits submitted, the motion for summary judgment dismissing the complaint and for a summary declaratory judgment on the city’s counterclaim (which requested a declaration that the contract was illegal and void, that the plaintiff has no rights under it, that the acceptance of the $150,000 deposit constituted a rescission and an abandonment of the contract, and that the plaintiff cannot recover damages against the city by reason of the plaintiff’s attempt to comply with the contract) is denied, with $10 costs.