Chief Judge Fuld.
For many years, the plaintiff, George Scheck, had been the personal manager of defendant Connie Francis, a popular singer. He brings this suit against her and against her three business corporations, alleging a breach of employment agreements covering a five-year period. The complaint has been dismissed on the ground that it is barred by the Statute of Frauds..
In February, 1968, about a year after an earlier employment agreement had expired, the parties entered into negotiations *469 for a new contract. The defendants’ attorney, Marvin Levin, Esq., had submitted a number of proposed agreements for the plaintiff’s approval which he found unsatisfactory. After a final negotiation session, Mr. Levin mailed to the plaintiff the four agreements here involved in quadruplicate, with a covering letter, dated April 15, 1968, requesting the plaintiff to 1 ‘ sign all copies” and “have Connie sign” them.[1] It is urged—in reliance upon our decision in Crabtree v. Elizabeth Arden Sales Corp. (305 N. Y. 48)—that these agreements, signed only by the plaintiff, and Mr. Levin’s letter constitute, when taken together, a sufficient memorandum to satisfy the Statute of Frauds (General Obligations Law, § 5-701, subd. 1.). According to the plaintiff, he signed the agreements promptly; they were, however, never signed by Miss Francis as called for by the letter. He continued to work for the defendants until August 12, 1968, when their attorney notified him that he was not to ‘ ‘ enter into new negotiations for [Connie Francis’] services, unless and until she notifies you in writing to the contrary.” In March, 1969, after having unsuccessfully sought certain compensation and accountings in the interim, the plaintiff was advised by the defendants ’ new attorneys that there were ‘ ‘ no contracts in existence between [him] and our client.” The present suit for damages followed.
It is well settled that, if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be *470 held liable until it has been written out and signed. (See Brause v. Goldman, 9 N Y 2d 620; Harvey v. General Cable Corp., 2 N Y 2d 986 ; Schwartz v. Greenberg, 304 N. Y. 250, 254.) In the Schwarts case (304 N. Y. 250, supra), for instance, involving the purchase and sale of stock, the parties met for the purpose of signing a written contract dealing with the transaction. Each signed his own copy but, because the check offered by the buyer was not certified, each picked up his contract and left, arranging to meet the next day. The defendant then refused to go through with the agreement, and this court upheld a determination in his favor on the ground that “ [i] t is entirely plain * * * that the parties did not intend to be bound until a written agreement had been signed and delivered ” (304 N. Y., at p. 254).
The writings before us likewise evidence the intention of the parties not to be bound until the agreements were signed. The plaintiff urges that there was, at least, a triable issue whether Mr. Levin’s letter constituted proof that the parties had agreed upon the terms of the contracts and, hence, was susceptible of being accepted as a memorandum of those contracts. We do not agree. It appears quite clear, from Mr. Levin’s letter alone, that the agreement's were to take effect only after both parties had signed them, Thus, he had instructed the plaintiff that he was to sign them and “have Connie sign” them, expressly advising him to call if there were “ any questions or comments ”. Although the agreements themselves were not required to be delivéred to the plaintiff’s attorney (Mr. G-ranett) before the parties had signed, a copy of the covering letter was sent to him. This combination of circumstances unquestionably gave the plaintiff an. opportunity to decline to go through with the deal before he signed. Certainly, the defendant Francis enjoyed the same privilege, and she never did sign. In short, both parties must plainly have understood that the agreements were to take effect only after they had signed them and, until that time, the matter was still in the stage of negotiations.
The plaintiff’s reliance upon the Crabtree case (305 N. Y. 48, supra) is misplaced. We there held that the memorandum necessary to satisfy the Statute of Frauds may be “ ‘ pieced together out of separate writings, connected with one another either *471 expressly or by the internal evidence of subject matter and occasion ’ ” and that, in case one of the writings is unsigned, they may be “ read together, provided that they clearly refer to the same subject matter or transaction.” However, we expressly declared, that all of the terms of the contract ‘ ‘ must be set out in the various writings presented to the court, and at least one writing, the one establishing a contractual relationship between the parties, must bear the signature of the party to be charged, while the unsigned document must on its face refer to the same transaction as that set forth in the one that was signed ” (pp. 55-56). Furthermore, the court pointed out, although a particular signed writing need not have been “ prepared or signed with the intention of evidencing the contract ” (p. 53), it must have been subscribed “ with intent to authenticate the information therein ” and that information must “ evidence the terms of the contract ” (305 N. Y., at p. 54; see, also, Mesibov, Glinert & Levy v. Cohen Bros. Mfg. Co., 245 N. Y. 305, 310.)
In the present case, unlike Crabtree, the letter signed by the defendants’ attorney (Mr. Levin) does not serve to establish a contractual relationship between the parties. It says nothing about the terms of the contracts and authenticates no information contained in them. Quite obviously, it was written for the sole purpose of forwarding the documents to the parties for signature, and it is impossible to infer from the letter an intent either to bring a contract into being or to establish one of its essential terms. It was but a step in the negotiations looking toward contracts which were to come into existence only upon their being signed by the parties. As Justice Eager, writing for the Appellate Division, put it, “ the letter drafted by defendants’ attorney, as stated on its face, was intended merely as a means of transmittal to the plaintiff of unexecuted contracts * * *. The letter was written and signed for a specified. limited purpose and we may not infer from the signing and delivery thereof that the defendants intended thereby to establish a contractual relationship or to authenticate the terms of an agreement as set forth in the enclosed unsigned documents. The signatures which would authenticate the existence of the contracts within the meaning of the statute were to be made later after the *472 parties read and approved the terms set forth in the proposed documents ” (33 A D 2d 91, 94-95).
The plaintiff misconceives the relevance of the parol evidence rule in a case involving the Statute of Frauds. Where it is clear from the writings themselves that they do not constitute a memorandum sufficient to satisfy the statute, it is ‘ ‘ immaterial ”, as pointed out below, whether or not they “ accurately reflect and contain all of the pertinent terms of a prior alleged oral agreement * * * which does not purport to be authenticated by any signature of the defendants or their agent ” (33 A D 2d, at pp. 95-96). In other words, where the writings are plainly insufficient on their face, the conclusion follows, as a matter of law, that they-do not satisfy the Statute of Frauds. (See, e.g., Mesibov, Glinert & Levy v. Cohen Bros. Mfg. Co., 245 N. Y. 305, 310-312, supra.)
Nor do the Federal cases upon which the plaintiff relies support his position. (See, e.g., Ideal Structures Corp. v. Levine Huntsville Development Corp., 396 F. 2d 917; Hotel Woodward Co. v. Ford Motor Co., 258 F. 322, same case, 271 F. 625.) The Ideal case (396 F. 2d 917, supra), for instance, as in Crabtree, involved .several signed and unsigned instruments. The court held that these entitled the plaintiff to introduce oral evidence to establish that they were connected and that there was assent by the party to be charged—who had signed one writing—to the contract as reflected in both the signed and unsigned documents. In reaching this conclusion, the Federal court pointed out that, in the cases which distinguish Crabtree, the courts have ‘ ‘ emphasized either the total absence of a necessary item of contract * * * or the lack of m praesenti language in the signed instruments * * * or the preparation by plaintiffs of the unsigned instruments ” (396 F. 2d, at p. 928). In the present case, it is the total absence of in praesenti language in the covering letter of Mr. Levin which precludes invocation of the Crabtree rule. Not only does the letter fail to refer to the contract as a fait accompli but Mr. Levin makes it clear that the consummation of the agreement was to wait upon the signing by the two signatories. The Ford Motor Co. case, too (258 F. 322; same case 271 F. 625, supra), is in sharp contrast to the present. There, the letter to the plaintiff by the agent of defendant lessor was much more than a covering letter of trans *473 mittal, such as is here involved; it actually evidenced the total commitment of the defendant to the unsigned contract.
The order of the Appellate Division should he affirmed, with costs.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order affirmed.

. The letter reads as follows:
Dear George:
Enclosed, in quadruplicate, are the employment agreements between you and GGC Productions Corp., Connie Francis, Antigony Music Ltd., and Brookings Music Inc. Please sign all copies, have Connie sign all copies and distribute the copies as follows:
One set to me
One set for the office
One set to you
One set for Sol Granett [Plaintiff’s attorney]
If you have any questions or comments, please call me.
Sincerely yours,
Freedman, Borowsky and Lorry
By: [signed] Marv
ee: Connie Francis
Solomon Granett, Esquire