**BABDO SALES, INC., a Connecticut Corporation, Plaintiff,**

v.

**MILLER–WOHL COMPANY, Inc., a Delaware Corporation, Defendant.**

**No. 69 Civ. 5676.**

United States District Court,
S. D. New York.

Aug. 4, 1970.

E. Compton Timberlake, New York City, for plaintiff; John R. Hally, David M. Saltiel, Daniel C. Sacco, Nutter, Mc-Clennen & Fish, Boston, Mass., of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant; George G. Gallantz, Neil E. Needleman, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

In this diversity action plaintiff seeks a declaratory judgment that it is entitled to the use and occupancy of certain departments of defendant's stores under licensing agreements allegedly entered into by plaintiff with defendant, and the enjoining of defendant from attempting to terminate the agreements. Plaintiff moves, pursuant to F.R.Civ.P. 56 for summary judgment in its favor, and defendant moves for summary judgment dismissing the complaint on the ground that the alleged licensing agreements are void under the New York Statute of Frauds, General Obligations Law, McKinney's Consol. Laws, c. 24–A, § 5–701 (1).

Plaintiff is a Connecticut corporation engaged in the retail sale of stationery, records, novelties, and other merchandise; it obtains licenses or leases from department stores to conduct its business on their premises in return for a percentage of its gross sales. Defendant, through its subsidiaries, operates a chain of discount department stores. Pursuant to concededly valid written agreements and extensions thereof entered into by plaintiff and defendant between 1961 and 1968, plaintiff now operates stationery and record departments in defendant's stores in Hutchinson, Kansas; Salina, Kansas; Waterloo,

Iowa; Boise, Idaho; Muncie, Indiana; Marion, Ohio; Youngstown, Ohio; Newark, Ohio; Mansfield, Ohio; and Lima, Ohio (two stores—Northland Plaza and American Mall). In addition, plaintiff operates a stationery and record department in defendant's twelfth store in Springfield, Ohio, with regard to which there is no written agreement; defendant contends that plaintiff is a trespasser in that store. The agreements or extensions thereof under which defendant operates its departments in the first eleven stores are due to expire at various dates from 1970 through 1972, beginning with August 31, 1970 (the Youngstown store) and October 31, 1970 (the Boise and Newark stores). The sole issue presented by these motions for summary judgment is whether alleged new oral agreements extending and amending the written agreements involving the eleven stores, and a new oral agreement involving the Springfield store, which allegedly do not terminate until February 28, 1975, are void under the New York Statute of Frauds so that plaintiff's right to utilize departments of defendant's stores for its stationery and record business terminates as of the expiration dates of the existing agreements (and, as to the Springfield store, whether there is a presently valid agreement: eviction proceedings in an Ohio state court were removed to an Ohio federal court and there stayed pending disposition of this action).

The original written agreements are similar in substance, providing that the subsidiary operating the store, as "Licensor," grants to plaintiff, as "Licensee," a license and privilege of operating a "Department" within the store to sell stationery and records, in a specified area of space within the store, the location of which is indicated on an attached diagram, for a specified period of time; that notwithstanding the term of the license, it shall terminate whenever defendant ceases operating the store for whatever reason; that the Licensor has sole discretion at any time to change the location of the Licensee's space to another space of the same areas within the store; and that the Licensee agrees to pay a yearly minimum rental of $8,500.00 or $10,000.00 and 7% of gross record sales and 10% of all other sales in excess of the minimum rental.

In 1968, plaintiff and defendant entered into negotiations regarding the terms of a licensing agreement for the operation by plaintiff of a stationery and record department in defendant's new, twelfth store to be opened in Springfield, Ohio. In the course of these negotiations it was agreed that the rentals at the new store would be 8% on records and 12% on other gross sales, and that the license would run to February 28, 1975. During these negotiations, the parties appear to have orally agreed to extend the existing 11 licensing agreements to February 28, 1975, in consideration of an increase in rentals based on the Springfield negotiation.

On February 12, 1969, Victor Fortgang, a vice-president of defendant and chief negotiator of the licensing agreements with plaintiff, sent an internal memorandum to Max Shor, defendant's assistant comptroller. The memorandum bears only Fortgang's typed signature, and reads as follows:

"February 12, 1969

"Memo: Shor

We have today negotiated a new license agreement with Mr. Hy Weinberg of Babdo Sales, which will be as follows:

1. All stationery is now rentable at 12% of sales and all records at 8% of sales.

2. The minimum guarantees are to be increased to reflect increased percentages.

[handwritten] 8500 to 10,000–.
10,000 to 12,000–.

3. We are to deduct earned percentage on a week-to-week basis.

The above agreement will be effective as of March 1, 1969 and will run until February 28, 1975. New licensing agreements will go forward in about a week to replace those present-

ly in effect. Agreements will cover all stores—801 through 812.

Victor Fortgang

cc: Seslowe
    Nieman
    Jankell
    M. W. Tomber"

Sometime in March or April, 1969, after plaintiff had examined a preliminary draft, Leonard Nieman, a vice-president and the comptroller of defendant, sent 10 letter agreements dated February 28, 1969 to plaintiff. The letter agreements recite that they contain the complete terms of the extensions of the licensing agreements for the first 10 stores, and conclude with the following paragraph:

"Your signature at the foot hereof shall constitute the entire agreement in this respect. Please sign and return two copies of this letter, and retain one copy for your own files."

At the end of each letter agreement the names of both parties are typed with blank spaces for signatures and the words "Agreed to" appear over plaintiff's typed name.

Commencing March 1, 1969, defendant began to deduct from plaintiff's gross sales, percentage rentals on a weekly basis—8% of record sales and 12% of all other sales as stated in the letter agreements—and remitted the balance to plaintiff. Defendant also deducted the minimum rentals on a weekly basis.

On April 7, 1969, Shor sent a letter to plaintiff, reading as follows:

"Babdo Sales, Inc.
59 East Cedar Street
Newington, Connecticut

*Re: Final Accounting under Existing Leases*

Gentlemen:

In accordance with our agreement we are terminating your existing leases in the Welles Stores as of February 28, 1969 in order to initiate the new leases as of March 1, 1969. We are attaching herewith a Final Accounting for each of the stores involved which shows our computations in ar-riving at the balance of additional rental due under the old leases.

\* \* \* \* \* \*

[there follow figures for the balance of rent due as to each of the stores]

We hope you find this satisfactory to you.

Very truly yours,

WELLES DEPARTMENT STORES

(signed) M. Shor

Assistant Comptroller"

In April, 1969, a 37% interest in defendant was purchased by Julius Paris and his associates from members of the Tomber Family who had previously controlled defendant; Paris was elected president, chief executive, and director. Paris decided that in the future defendant would operate its own departments rather than license others, and on May 5, 1969, Heinz Eppler, an assistant to Paris, wrote an internal memorandum to Fortgang and others, stating:

"Memo to:

Philip D. Blomberg
Victor Fortgang
Sam Seslowe
Leonard L. Nieman
Herbert Curtin
Harry Kottler

No lease for store premises, or license agreements for Welles departments shall be made, modified or extended without the prior approval of Harry Kottler. All such leases, agreements, modifications and extensions shall be signed on behalf of the Company only pursuant to Mr. Paris's written instructions.

This directive applies not only to all future transactions, but also to all previous agreements that have not yet been executed.

Richard Jankell has been instructed to prepare such documents only upon written instructions from the President's office (Julius Paris, Heinz Eppler or Harry Kottler).

Heinz Eppler"

On May 20, 1969, plaintiff's president Hyman Weinberg returned the 10 letter agreements dated February 28, 1969, bearing his signature, with a covering letter which concluded:

> "I find that you did not include leases for the Lima Mall Store #811 and Springfield Store #812. I would greatly appreciate your sending same to us and returning copies of signed leases as soon as possible."

Subsequently, defendant sent plaintiff the eleventh letter agreement covering the Lima Mall store, which Weinberg signed on behalf of plaintiff and returned to defendant. No letter agreement was prepared covering the Springfield store.*

Defendant never executed the eleven letter agreements which had been signed by plaintiff and returned to defendant. Instead, defendant informed plaintiff that it regarded the renewals (letter agreements) signed by plaintiff as ineffective, and that the existing licensing agreements would expire on their stated expiration dates. By letter dated September 8, 1969, Paris informed plaintiff that it stood by that position and refunded to plaintiff rentals paid by plaintiff in excess of the amounts stated in the existing licensing agreements which it had previously deducted. Thereafter, plaintiff returned to defendant the amounts refunded, and on September 18, 1969 Paris responded with a letter to plaintiff repeating defendant's position, concluding:

> "There would be no purpose in our sending checks back and forth to one another until this matter is resolved legally, and, accordingly, we shall maintain in a suspense account the difference between what we regard as proper payments under your license agreements and the amounts which you presist (sic) in paying in excess of that sum. Disposition of the sums now in the suspense account will be

resolved when our respective rights in the matter are concluded."

### Part Performance

■ Plaintiff contends that the oral extension agreements are taken out of the Statute of Frauds by virtue of part performance in that defendant accepted the rentals at the higher rates agreed upon, and plaintiff has continued to occupy the departments and conduct its business at the Welles stores. However, part performance of an oral agreement not to be performed within one year does not take the agreement out of the Statute of Frauds. Grissman v. Union Carbide Corp., 279 F.Supp. 413 (S.D.N.Y.1968); In re Ditson's Estate, 177 Misc. 648, 31 N.Y.S.2d 468 (Sur.Ct.N.Y. Co.1941); Newkirk v. C. C. Bradley & Son, 271 App.Div. 658, 67 N.Y.S.2d 459 (4th Dept.1947); Deutsch v. Textile Waste Merchandising Co., 212 App.Div. 681, 209 N.Y.S. 388 (1st Dept.1925).

The complaint alleges that plaintiff's payment of increased rentals "is part performance of the said agreement which relates to an interest in or concerning land," and plaintiff contends that this case therefore comes under an exception to the usual rule. See General Obligations Law § 5–703(4). The agreements here are characterized as licensing agreements. Although the intended space to be utilized is indicated in the agreements, the licensor reserves the power to change the location, and the license terminates when the licensor ceases doing business on the premises. On these facts, plaintiff does not have a contract relating to an interest in or concerning land, because "there is such control by the licensor of the licensee that the licensee had only the privilege of conducting the department, and not exclusive possession and control as against the licensor." Layton v. A. I. Namm & Sons, 275 App.Div. 246, 250, 89 N.Y.S.2d 72, 75 (1st Dept.1949), aff'd, 302 N.Y. 720, 98 N.E.2d 590

---

* There was deposition testimony with regard to a Fortgang memorandum and a draft of a licensing agreement prepared by Jankell in connection with the Springfield store, but it appears that neither is extant.

(1951). Senrow Concessions v. Shelton Properties, 10 N.Y.2d 320, 222 N.Y.S.2d 329, 178 N.E.2d 726 (1961); People v. Horowitz, 309 N.Y. 426, 131 N.E.2d 715 (1956); Wash-O-Matic Laundry Co. v. 621 Lefferts Avenue Corp., 191 Misc. 884, 82 N.Y.S.2d 572 (Sup.Ct.Spec. Term Kings Co. 1948).

■ Accordingly, as the oral agreements do not relate to interests, in or concerning land, but are only licenses, part performance, assuming that such there was, does not take them out of the applicable New York Statute of Frauds, General Obligations Law § 5–701(1), which provides:

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime."

*Sufficient Memorandum*

The oral licensing agreements are void under the Statute of Frauds unless there is "some note or memorandum thereof * * * in writing, * * * subscribed by the [defendant], or by his lawful agent." Plaintiff contends that the Fortgang inter-office memorandum of February 12, 1969, the 11 letter agreements dated February 28, 1969, and the April 7, 1969 Shor letter to plaintiff, taken separately or together, constituted a memorandum satisfying the Statute of Frauds.

Plaintiff relies on Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 110 N.E.2d 551 (1953), which held that two signed payroll cards and an unsigned office memorandum which taken together contained all the essential terms of a contract of employment were sufficient to constitute a written memorandum satisfying the Statute of Frauds. Defendant relies on Scheck v. Francis, 26 N.Y.

2d 466, 311 N.Y.S.2d 841, 260 N.E.2d 493 (1970), holding that a covering letter from an entertainer's attorney to plaintiff, her agent, together with an enclosed employment contract which was signed by the plaintiff but not by defendant entertainer, were not a sufficient memorandum.

■ Shor's April 7, 1969 letter to plaintiff is a memorandum subscribed by the lawful agent of defendant—Shor was specifically authorized by Nieman, defendant's comptroller, to send the letter—but it does not state the terms of the licensing agreement. Under *Crabtree*, however,

"The statute of frauds does not require the 'memorandum * * * to be in one document. It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion.'" 305 N.Y. at 54, 110 N.E.2d at 553.

Moreover, while the terms of the contract must be contained in one or more writings, the connection between the signed and unsigned writings may be shown by parol evidence—

"None of the terms of the contract are supplied by parol. All of them must be set out in the various writings presented to the court, and at least one writing, the one establishing a contractual relationship between the parties, must bear the signature of the party to be charged, while the unsigned document must on its face refer to the same transaction as that set forth in the one that was signed. Parol evidence—to portray the circumstances surrounding the making of the memorandum—serves only to connect the separate documents and to show that there was assent, by the party to be charged, to the contents of the one unsigned." 305 N.Y. at 55, 56, 110 N.E.2d at 554.

Shor's letter of April 7, 1969 was sent to plaintiff after defendant had begun to deduct percentage and minimum rentals at the higher rates previously agreed

upon and which were stated in the letter agreements and in Fortgang's inter-office memorandum. Shor's letter states that the old leases are being terminated effective March 1, 1969 "[i]n accordance with our agreement." Defendant's letter recites a final accounting of the rentals due for its stores under the old leases, which would be superfluous unless it considered the old leases terminated by the new agreements.

The writings themselves, and the parol evidence which is not controverted, establish that the agreement referred to in Shor's letter is the one set forth in Fortgang's inter-office memorandum and in the several letter agreements. The letter agreements provide an effective date as of March 1, 1969, and refer to those stores for which a final accounting on the prior leases is rendered in Shor's letter. The terms of the agreement to which Shor's letter refers are contained in the letter agreements (which incorporate the existing agreements) and in Fortgang's inter-office memorandum—and "it is apparent, and most patently, that all three refer on their face to the same transaction." *Crabtree, supra,* 305 N.Y. at 56, 110 N.E.2d at 554. The oral agreement changed the terms of the pre-existing licensing agreements in only three particulars: (1) the minimum rentals were increased from $8500 to $10,000, and from $10,000 to $12,000, depending on the particular agreement; (2) the term of the licenses was extended to February 28, 1975; and (3) the percentage rentals were increased from 7% to 8% for records, and from 10% to 12% for other sales, and these changes are clearly set forth in the writings.

Shor's letter does not name the Lima store, nor render an accounting with reference to it. However, the letter states that it is terminating "your existing leases in the Welles stores." A letter agreement was sent with reference to the Lima store, and Fortgang's memorandum refers to "all stores—801 through 812," (the Lima store being 811). It is clear therefore that "our agreement" in Shor's letter included the Lima store.

Similarly, Shor's letter does not mention the Springfield store, evidently because, there being no existing agreement, no accounting was called for. Fortgang's memorandum states that "New licensing agreements will go forward in about a week to replace those presently in effect. Agreements will cover all stores—801 through 812," and it is clear from the writings that "812" refers to the Springfield store, and that this licensing agreement was to contain the same terms as the others.

In *Scheck,* plaintiff offered as memoranda in satisfaction of the Statute of Frauds copies of an unexecuted agency contract and the covering letter of defendant's attorney with which they were sent. There was nothing in either the attorney's letter or the unexecuted contracts to indicate assent to oral agreements previously made; on the contrary, as the Court of Appeals held:

"It is well settled that, if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed.

\* \* \* \* \* \*

The writings before us \* \* \* evidence the intention of the parties not to be bound until the agreements were signed." 26 N.Y.2d at 469, 470, 311 N.Y.S.2d at 843, 260 N.E.2d at 494.

Here, on the other hand, Shor, an agent of defendant, indicated in his letter to plaintiff defendant's assent to an existing oral agreement and that defendant had taken actions, terminating the old agreements, rendering final accountings thereunder, and initiating the new ones, which, in addition to the reference to "our agreement," clearly show that defendant considered itself to be bound by the oral agreement.

Accordingly, defendant's motion for summary judgment dismissing the com-

plaint is denied, and plaintiff's motion for summary judgment declaring that it is entitled to the use and occupancy of the licensed premises under the terms of the letter agreements, and enjoining the defendant from attempting to terminate the agreements except in accordance with their terms, is granted.

Settle judgment on notice.

It is so ordered.