Titone, J.
(dissenting). Plaintiff is a joint venture of construction and real estate interests. It seeks damages from defendant City of New York arising out of the alleged breach of "letters of agreement to negotiate” with the Department of Housing Preservation and Development (HPD), in which plaintiff was designated as the tentative developer of certain property in the Washington Street Urban Renewal Area (WSURA) and in which HPD agreed to exclusively negotiate with plaintiff for 90 days regarding the ultimate disposition of that property.
In its first and second causes of action, plaintiff contends that the city was contractually obligated by the letters of negotiation to bring, plaintiff to the Board of Estimate, for *993 approval, as purchaser and developer of the urban renewal property, and to grant plaintiff tax abatements for the property. Plaintiff claims that it is entitled to damages amounting to $600,000,000 for the moneys it expended during negotiations, as well as the profits it lost and the tax abatements which will never be granted, when, as a result of a change in land use policy, HPD terminated negotiations and no agreement for the sale of the property to plaintiff was reached.
Under the letters the city specifically "retain[ed] the right to terminate negotiations at any time”. Further, plaintiff specifically recognized and acknowledged that it was undertaking steps at its "sole risk, cost and expense”, and that, ultimately, the land disposition agreements might never be approved by the Board of Estimate, as required by law (General Municipal Law § 507; New York City Charter § 67 [4]).
Special Term denied the city’s motion to dismiss the first two causes of action for legal insufficiency. The Appellate Division, First Department, affirmed, Presiding Justice Murphy dissenting, and granted leave to appeal. I would reverse.
It is evident that the letters of negotiation left open major elements of the potential real estate transaction that plaintiff now seeks to culminate through litigation and were simply the parties’ written memorialization of their intent to negotiate the terms for the purchase and development of the urban renewal property (see, Scheck v Francis, 26 NY2d 466, 470; Schwartz v Greenberg, 304 NY 250, 254). "Negotiations look to the future; they are the deliberations which take place between the parties touching a proposed agreement * * * A promise to negotiate at a future time is not a contract” (Royce Haulage Corp. v Bronx Term. Garage, 185 Misc 892, 894 [App Term]; see, Underhill Constr. Corp. v New York Tel. Co., 44 NY2d 666, affg 56 AD2d 760). Indeed, "it is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable” (Martin Delicatessen v Schumacher, 52 NY2d 105, 109; see also, Willmott v Giarraputo, 5 NY2d 250, 253).
The Appellate Division majority found that "the designation agreements did impose the implied obligations of good faith, cooperation and fair dealing implicit in any contract. Upon a breach of these obligations, the law does afford a remedy. These were not mere agreements to agree” (111 AD2d, at p 52), and the adoption of that finding by this court begs the *994 question. As Judge Weinfeld put it, "A commitment to good faith negotiations does not carry with it a surrender of one’s right to decide not to enter into another contract with a party” (Candid Prods. v International Skating Union, 530 F Supp 1330, 1337; see also, Oil Trading Assoc. v Texas City Refining, 303 F2d 713, 715; Mocca Lounge v Misak, 94 AD2d 761, 763).
Clearly the courts would not be empowered to direct the city to continue negotiations with the plaintiff or direct the Board of Estimate to approve a final sale and development of the sites (cf. Candid Prods. v International Skating Union, supra, at p 1337). Nor could damages be assessed against the city for terminating a project which its agencies were indisputably entitled to terminate (see, Citizens Comm. v Lindsay, 507 F2d 1065, 1072). Plaintiff, as the designated developer, theoretically could have gone all the way to Board of Estimate approval, been disapproved, and had no breach of contract action against the city because nothing obligated the Board of Estimate to approve any arrangement for land disposition. Why is plaintiff better off now?
The record amply supports Presiding Justice Murphy’s observation in dissent below, that "in light of the city’s change in utilization policy, it is inconceivable that any such approval would be forthcoming” (111 AD2d, at p 54).
That change in policy resulted from a study instituted for the purpose of ascertaining methods by which the city could promote the best use of city-owned land such as would forestall the loss of back office jobs that would result from threatened relocations in the financial and securities industries. As a preventative measure, the report recommended that the city set aside large parcels of city-owned land for direct sale to companies wishing to construct their own back office space without the added expense and delay that the use of a developer might entail. Negotiations were terminated with plaintiff as a direct result of the study and the change in land-use policy.
Rochester Park v City of Rochester (38 Misc 2d 714, affd 19 AD2d 776), relied upon heavily by plaintiff and the courts below, is plainly distinguishable, and in any event not binding. There, the contract sought to be enforced had been fully approved by the City Council, the relevant governing body (38 Misc 2d, at p 716), and appears to have been quite specific in creating presently enforceable duties and obligations upon the *995 City of Rochester, rather than a mere agreement to agree (see, 38 Mise 2d, at pp 715-716).
It should also be noted that the designation letters explicitly state that the developmental planning of the sites was to be undertaken at plaintiff’s “sole risk, cost and expense”. Thus, irrespective of the other contractual terms, plaintiff cannot, as a matter of law, obtain recompense for such expenses.
For these reasons, I would reverse the order of the Appellate Division and grant the city’s motion to dismiss the first and second causes of action.
Judges Meyer, Simons, Kaye and Hancock, Jr., concur; Judge Titone dissents and votes to reverse in an opinion in which Judge Alexander concurs; Chief Judge Wachtler taking no part.
Order affirmed, with costs, and question certified answered in the affirmative in a memorandum.