**MICHAEL COPPEL PROMOTIONS PTY. LIMITED d/b/a Michael Coppel Presents, Plaintiff,**

v.

**Michael BOLTON and MBO Tours, Inc., Defendants.**

**No. 97 CIV. 2646(DC).**

United States District Court, S.D. New York.

Nov. 10, 1997.

---

Paul, Hastings, Janofsky & Walker, L.L.P. by James W. Kennedy, New York, NY, for Plaintiff.

Frankel & Abrams by Sandor Frankel, Lawrence H. Sharf, New York, NY, for Defendants.

CHIN, District Judge.

This is a breach of contract action filed by Michael Coppel Promotions Pty. Limited ("MCP"), an Australian corporation engaged in the business of marketing and promoting concerts, against Michael Bolton ("Bolton"),

the pop singer, and MBO Tours, a corporation used by Bolton to arrange concert tours. In essence, MCP claims that defendants "unjustifiabl[y] repudiat[ed]" a 1996 concert agreement when Bolton abruptly cancelled an eight-concert tour of Australian cities just two weeks before the tour was scheduled to begin. (Am. Compl. ¶ 1).

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6). They contend that plaintiff has failed to state a claim for the following reasons: (1) MCP's telefax of April 22, 1996 constitutes a counteroffer extinguishing its prior offer; (2) defendants expressly made written acceptance and payment of an advance the preconditions for an enforceable contract; and (3) the complaint fails to sufficiently allege the existence of an oral contract.

For the reasons set forth below, defendants' motion is denied.

## BACKGROUND

Plaintiff's Amended Complaint alleges that in early March of 1996 representatives of the parties[1] "orally agreed [to] the material terms" of a concert agreement. (Am. Compl. ¶ 2). Under the terms of this alleged contract, Bolton promised to perform eight concerts in various Australian cities between May 14–28, 1996 (the "Australian Tour"). (See id. ¶¶ 1, 25). In return, Bolton would be paid "the greater of $1,200,000 or 85% of the net door receipts of ticket sales." (Id. ¶¶ 3, 25). With the apparent consent of defendants' booking agent and in accordance with the "prevailing custom and usage in the concert promotion and touring business," MCP immediately commenced ticket sales for six of the eight tour dates and engaged in extensive promotional activities. (Id. ¶¶ 13, 27–30).

The parties continued to exchange telefaxes and telephone calls regarding various issues relating to the tour. In separate telephone conversations in March of 1996, Podell

of ICM allegedly requested that MCP delay ticket sales for one week due to problems with the Korean tour, and then assured MCP that ticket sales could begin on March 29, 1996.

On or about April 16, 1997 ICM sent MCP a short form of the alleged concert agreement (the "Short Form"). Approximately one week later, MCP received from ICM a contract rider (the "Rider").[2] Plaintiff alleges that the Short Form and Rider "fairly and accurately reflected the material terms" of the previous oral agreement, but also contained conflicting new terms, such as those concerning to which institution Bolton's advance should be paid. (Id. ¶¶ 18–20).

During the week of April 22, 1996, plaintiff learned that the Korean tour had been cancelled. Shortly thereafter, Podell called Coppel to suggest that MCP cancel the Australian Tour. Coppel refused, citing the expenses already incurred and the likelihood of a last-minute surge in ticket sales. (Id. ¶ 34).

On or about April 26, 1996 Podell cancelled the Australian Tour on behalf of Bolton and MBO, citing poor ticket sales. Plaintiff alleges that defendants backed out of the agreement "either because Bolton did not wish to endure the embarrassment of playing to less than capacity crowds if ticket sales did not improve at the Australian venues, or because the cancellation of the Korean tour dates had decreased the potential profitability of his Southeast Asian tour plans, or both." (Id. ¶ 37).

## DISCUSSION

### A. Applicable Standard

In reviewing a motion to dismiss, this Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir.1996). A complaint may not be dismissed

---

1. The complaint alleges that International Creative Management, Inc. ("ICM") served as Bolton's and MBO's agent during these negotiations. Jon Podell and Peter Nash conducted the negotiations for ICM, while Michael Coppel negotiated on behalf of MCP. (Am. Compl. ¶¶ 11–12).

2. Although the Complaint alleges that the Short Form was received by MCP on or about April 11, 1997 (Am. Compl. ¶ 15), by letter dated November 6, 1997 plaintiff's counsel advises the Court that in fact the Rider was received sometime after April 22, 1997.

under Rule 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In other words, the issue before the Court "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996).

### B. *Defendants' Motion to Dismiss*

Accepting as true the factual allegations set forth in the complaint and drawing all reasonable inferences in plaintiff's favor, I hold that plaintiff has stated a claim upon which relief may be granted.

#### 1. *The April 22, 1996 Telefax*

Defendants insist that no agreement, oral or written, was ever reached, and that continued negotiations reflect the unresolved state of affairs. Defendants argue that Coppel's April 22, 1996 telefax to Nash (Am. Compl., Ex. C) represents a "counteroffer" that "extinguished" defendants' initial "offer." (Defs. Mem. at 7–9).

In the fax, Coppel states:

I've received three different sets of instructions for the transfer of the deposit, nominating variously: Chase Manhattan (fax dated 16 April), Barclays' Bank PLS, London (in all versions of the contract received to date), Chemical Bank, New York (fax dated 19 April). Even if I assume that the most recent instruction is the routing information actually required I cannot comply with your instruction to transfer funds directly to the artist's account—these funds should be held by I.C.M. pending the performance of the contract, which is the way I have always operated.

. . .

Clause 4. A. My offer specified that I would be responsible for "hotel accommodation" (room rate only)—please delete the words "inclusive of breakfast." B. Peter—frankly I have a problem with the tour party increasing to 42 persons—for the previous Australian tour the touring party was 29 persons.

. . .

Clause 13. Noted that sponsorship arrangements have been approved and agreed, and in this regard it is requested that the sponsorship terms agreed be attached as an addendum to the contract.

■ This document constitutes a counteroffer only if no enforceable oral agreement previously had been reached in March of 1996. At this early stage in the proceeding, I cannot conclude as a matter of law that no oral agreement was reached in March or that MCP's April 22, 1996 fax constituted a counteroffer. The fax is consistent with either plaintiff's or defendant's theory of the case. It can be construed either as a counteroffer or merely as evidence of ongoing negotiations as to ancillary details, representing only Coppel's request for clarification of the wire transfer procedure and his objection to the enlargement of Bolton's entourage. (Defs. Mem. at 5–6). The fax may tend to show, as defendants claim, that agreement as to material terms had not yet been reached; on the other hand, the document does not undermine plaintiff's principal argument that agreement had been reached as to the major terms and that only secondary issues remained.

Moreover, whether this document constitutes a counteroffer cannot be resolved on a motion to dismiss where, as here, the issue is bound inextricably with the fact question of whether an oral agreement has been reached. As the Second Circuit has made clear, "the issue of whether (and when) the parties intended to be bound is a factual issue that should [be] submitted to the jury." *International Minerals & Resources, S.A. v. Pappas*, 96 F.3d 586, 593 (2d Cir.1996). Thus, the April 22, 1996 fax does not bar plaintiff's suit.

#### 2. *Conditions Precedent to an Enforceable Contract*

Defendants also insist that plaintiff failed to comply with two conditions precedent to the formation of the concert agreement: written acceptance of the contract and payment of an advance. They point to the Rider

(Am. Compl., Ex. A) as evidence that both conditions were "explicitly made prerequisite to formation" of a binding contract. (Defs. Mem. at 10).

■ Under New York law, where parties unequivocally indicate a desire not to be bound by an agreement "until it is reduced to writing and signed by both of them, they are not so bound . . . until it has been written out and signed." *Scheck v. Francis*, 26 N.Y.2d 466, 469–70, 311 N.Y.S.2d 841, 843, 260 N.E.2d 493, 494 (1970); *see also BMH Realty Ltd. v. 399 East 72nd Street Owners, Inc.*, 221 A.D.2d 165, 633 N.Y.S.2d 141 (1st Dep't 1995).

In this case, however, the Rider does not constitute unambiguous evidence of the parties' intent not to be bound by an oral agreement. Assuming, as I must, that an oral contract was reached in March 1996, the unsigned Rider received one month later does not conclusively prove that the conditions set forth therein were raised during formation of the alleged oral contract. Furthermore, because the Rider was unilaterally issued by defendants and was never signed by either party, this Court cannot conclude that the parties ever *agreed* to payment of an advance and written codification of the terms of the agreement as conditions precedent. At this point, defendants have failed to show that these conditions were clearly established "at the time of contracting." *Consarc Corp. v. Marine Midland Bank*, 996 F.2d 568, 576 (2d Cir.1993); *see Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 688, 636 N.Y.S.2d 734, 735, 660 N.E.2d 415, 416 (1995) (parties' expression not to be bound orally unequivocal where they had executed letter agreement indicating there would be no valid sublease unless certain conditions were met).

■ Plaintiff's claim of partial performance of the alleged oral contract further militates against dismissal of the complaint. MCP alleges that it relied on defendants' repeated representations and assurances for a full month, expending considerable time and money performing its contractual obligations. (*See* Am. Compl. ¶¶ 39–41). As the Second Circuit has noted, "partial performance is an unmistakable signal that one

party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect." *R.G. Group, Inc., v. Horn & Hardart Co.*, 751 F.2d 69, 75 (2d Cir.1984). In light of defendants' failure to show that either party signalled its desire not to be bound by an oral contract alone, this Court may not ignore plaintiffs' allegations of partial performance.

■ In short, "[s]imply because the parties contemplate memorializing their agreement in a formal document does not prevent [an] agreement from coming into effect before written documents are drawn up." *International Minerals*, 96 F.3d at 593. Because the Rider does not clearly demonstrate "whether or not the parties intended to be bound prior to the formal execution of the suggested . . . agreement," defendants' motion to dismiss on the basis of the Rider is denied. *Buschman v. Diamond Shamrock Corp.*, 35 A.D.2d 926, 316 N.Y.S.2d 590, 591 (1st Dep't 1970)

### 3. *The Sufficiency of MCP's Allegations*

■ Finally, defendants contend that plaintiff has failed to particularize the terms of the alleged oral agreement. Under New York law, an agreement is enforceable if a meeting of the minds has occurred as to the contract's "material terms." *Four Seasons Hotels Ltd. v. Vinnik*, 127 A.D.2d 310, 317, 515 N.Y.S.2d 1, 6 (1st Dep't 1987). So long as such agreement has been achieved, subsequent discussions thereafter over related or tangential matters does not render the contract inchoate or invalid. See *id.; see also Teachers Ins. & Annuity Assoc. of Am. v. Tribune Co.*, 670 F.Supp. 491, 498 (S.D.N.Y. 1987) (describing two varieties of enforceable contracts—the first where complete agreement as to "major terms" has been reached, and the second where the parties have expressed a "binding preliminary commitment" to negotiate in good faith).

■ Plaintiff has more than adequately stated a claim for breach of contract. MCP alleges that the parties reached a binding oral concert agreement in March of 1996. And although defendants contend that plain-

tiff fails to specify the terms of the oral contract in the complaint (Defs. Mem. at 6–7, 15–16), plaintiff has in fact specifically described such terms—Bolton would perform eight concerts at various Australian venues, and was in turn promised specific compensation: the greater of $1,200,000 or 85% of net proceeds from ticket sales. (Am. Compl. ¶¶ 3, 25). MCP further alleges that industry practice permits the promotion of concerts once initial agreement has been achieved as to material terms, even though additional details remain to be finalized. While defendants assert that concert agreements customarily require a meeting of the minds on "many significant particulars" (Defs. Mem. at 16), they fail to specify any other material terms required of a binding contract as a matter of industry practice, but as to which no agreement was had in this case.

In sum, MCP has pled a viable claim for breach of contract. Accordingly, plaintiff is entitled to offer evidence in support of its action.

### CONCLUSION

Defendants' motion to dismiss is denied.

SO ORDERED.