NATIONAL UTILITY SERVICE, INC., Appellant, v. THATCHER GLASS MANUFACTURING COMPANY, INC., Respondent.

First Department, June 18, 1968.

*John M. Foley* of counsel (*Foley, Hickey, Gilbert & Currie,* attorneys), for appellant.

*David P. Bicks* of counsel (*Ronald D. Jones* with him on the brief; *LeBoeuf, Lamb, Leiby & MacRae,* attorneys), for respondent.

McNALLY, J. This is an appeal from an order denying appellant's motion for summary judgment on the second of three causes of action set forth in the complaint.

The second cause of action is in contract to recover 50% of overcharges in billings to defendant for electric power for the period October to December, 1963. In addition, plaintiff seeks 50% of the projected savings of $100,000 by reason of the cessation of the overcharges for the period January 1964 to September, 1968. The contract dated August 17, 1959 authorizes plaintiff " to secure all possible savings and refunds on our electric * * * rates ". The stipulated compensation is:

" 1. Fifty percent (50%) of all savings you secure for us for a period of sixty (60) months from the date each such saving appears on our bills.

" 2. Fifty percent of any refunds secured by you."

Defendant's facility in Elmira, New York, receives electric service from New York State Electric & Gas Corporation (NYSE&G). Prior to October, 1963 defendant was supplied under Service Classification No. 4. In September, 1963 Classification 4 was terminated and thereafter defendant was supplied current under Classification No. 3, which entitled defendant to a 5% primary service discount. The billings for October and November, 1963 failed to extend the 5% discount to defendant. The error was discovered by plaintiff. At plaintiff's suggestion the defendant called the error to the attention of NYSE&G, which immediately refunded the overcharges and in subsequent billings to defendant extended the 5% discount.

Involved is the interpretation and construction of the contract of August 17, 1959. Plaintiff's services were engaged to secure " savings and refunds on [defendant's] electric * * * rates ". Here involved are overcharges. The rate classification was not altered; it remained the same at all relevant times. The failure to extend the discount to defendant was apparently an oversight and was promptly rectified. Had plaintiff been engaged to secure " savings and refunds " without relation to the rate structure, there would be no ambiguity; plaintiff's contractual right to compensation would have been clear. Here, however, the contractual emphasis on " rates " may not be ignored. It introduces the element of ambiguity. There is also ambiguity as to the provision for compensation based on " savings ". Whether the conceded overcharge resulting from

the inadvertent omission to apply the 5% discount is within the category of "savings" also presents a mixed question of law and fact. "When the language employed is not free from ambiguity, or where it is equivocal and its interpretation depends upon the sense in which the words were used, in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact." (*Lachs* v. *Fidelity & Cas. Co.,* 306 N. Y. 363, 364.)

The order denying summary judgment as to the second cause of action should be affirmed, with costs and disbursements.

RABIN, J. (dissenting). I vote to reverse and would dismiss the second cause of action.

The agreement between the plaintiff and the defendant provides that the former was authorized to secure for the latter "all possible savings and refunds on our [defendant] electric, gas water and steam rates. It is understood you [plaintiff] will make a technical investigation and analysis of the various factors in our rates — advise where reductions and special rates can be obtained — and point out supplemental clauses or special riders that would reduce our costs."

The agreement also contains a schedule governing the amount to be paid to plaintiff for its services.

In the second cause of action, plaintiff seeks to recover, pursuant to the schedule, claiming that it procured savings for the defendant by discovering that the defendant's supplier of electricity had not given plaintiff a 5% discount on several bills. Plaintiff claims, as its fee, a percentage of money saved by the plaintiff as the result of the refund that defendant received from its electricity supplier, and also claims a percentage of all future savings as the result of that 5% discount.

It is important to understand that plaintiff did not obtain the 5% discount in rates for the defendant. In fact, defendant itself obtained such discount without any aid or interference by the plaintiff, through an arrangement with the electricity supplier, wherein the defendant was switched from one rate classification to another.

The rate reduction was not obtained or secured by the plaintiff in any manner. Plaintiff merely discovered a mistake in billing. While the plaintiff's discovery might have been of benefit to the defendant, that was not what plaintiff was hired to do, and for what defendant agreed to pay plaintiff. The contract required

plaintiff to "secure * * * savings and refunds * * * on * * * rates." There were no savings on a rate involved in this instance, nor any refunds as a result of a change in rate. The rate remained unaffected. Accordingly, the second cause of action should be dismissed.

TILZER and McGIVERN, JJ., concur with McNALLY, J.; RABIN, J., dissents in opinion, in which STEUER, J. P., concurs.

Order entered on February 14, 1968, affirmed, with $50 costs and disbursements to the respondent.