PEGGY CARNEGIE, Respondent, *v.* SARA K. ABRAMS, as Executrix of RALPH ABRAMS, Deceased, Appellant.

First Department, October 28, 1971.

*Mendel Zucker* of counsel (*Goldschmidt & Zucker*, attorneys), for appellant.

*Samuel J. Kisseloff* of counsel (*Buckley & Kisseloff*, attorneys), for respondent.

STEUER, J. Plaintiff has recovered in an action for brokerage commissions and we believe rightfully so. Defendant's testator (herein defendant) engaged plaintiff to find a buyer for two buildings located on East 11th Street, Manhattan. The terms given plaintiff were $250,000 payable $50,000 in cash, $100,000 by assumption of an existing mortgage and $100,000 by a 10-year purchase-money mortgage. When plaintiff produced a buyer able and willing to purchase on those terms defendant decided that he wanted $100,000 in cash and a $50,000 mortgage. The proffered buyer agreed to this change. Defendant then decided that he did not wish to sell. The defense is that there had been no agreement on the interest or amortization rates on the proposed mortgage. When defendant first advanced this reason in calling off negotiations he was asked what rates he desired and the buyer stated he was agreeable to any customary rates. Defendant refused to state what terms he desired. Defendant did not thereafter sell the property.

It is quite true that a brokerage commission is not earned until the broker has produced a buyer ready, willing and able to purchase on all of the terms specified by the seller so that there is a complete meeting of the minds on the sale. It is equally true that a failure to agree cannot be predicated on an afterthought. The question is always whether there is a genuine lack of consensus or a deliberate attempt to escape liability by attributing the failure of negotiations to such cause. The expression used is whether the defendant acted in good faith. In many cases this lack of good faith has been established by the fact that the owner

later sold the property to a higher bidder. The dissenters appear to believe that this is the sole criterion of good faith and that absent such a subsequent sale, the proposed seller can change his mind at will even though the term relied on was neither really in dispute nor of material consequence. We believe in this case bad faith was established.

The order of the Appellate Term should be affirmed, with costs.

McGIVERN, J. (dissenting). I feel I am constrained to vote for a reversal and dismissal because the plaintiff, unfortunately, did not produce a buyer, or in this case, buyers who met the mind of the owner on all the essential terms of an enforceable contract. And there being no proof that the primary purpose of the owner, in terminating the broker's efforts, was to reap the fruits and thwart the plaintiff of commissions, he is not culpable. Nor do I believe, as the majority state, that I "appear to believe" that the sole criterion of good or bad faith is a subsequent sale by the owner to a higher bidder. But I do say there is nothing in this record to justify a finding of bad faith.

Nor can I subscribe to the conclusion of the majority that "the term relied on was neither really in dispute nor of material consequence". That the term was unsettled and in dispute is evident from defendant's Exhibit A, wherein the plaintiff wrote, in her own handwriting "PM — 10 yrs.— going rate". Then, on cross-examination she testified that she remembered clearly that he said as to the interest and amortization on the purchase-money mortgage "going rate", but did not recall whether "we said eight and two". She further testified that at that time the going rate was 8% interest and 2% amortization on purchase-money mortgages; that "he said the going rate and I may have said eight and two and he said the going rate". Later she also testified, "I think I said to him eight and two and he nodded his head." In her examination before trial, she testified that "Mr. Abrams said he would work out terms" for the purchase-money mortgage; that he said "ten years, but he did not tell me what interest and what amortization", although "he said the going rate".

The foregoing, to me at least, indicates not only that the term was far from settled, but that the case rests on the sanguineness of the plaintiff ultimately to bring the parties together on the requisite specifics of an enforceable agreement, an event, which alas, did not take place.

And when the majority find that the rate of interest and the terms of amortization of the contemplated second mortgage were not "of material consequence", I respectfully invoke the recent

330

case of *Kaelin* v. *Warner* (27 N Y 2d 352) involving a broker "with terms to be arranged". The court (FULD, Ch. J.) said (p. 355): "Where an owner merely specifies the purchase price of property, without fixing the other terms of sale, commissions are not earned until and unless the person produced by the broker reaches an agreement with the owner not only as to price but also as to the terms upon which the sale is to be made."

And since a mere change of mind does not cast an owner in damages (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378), regretfully, I would dismiss the lady's complaint.

KUPFERMAN and McNALLY, JJ., concur with STEUER, J.; McGIVERN, J., dissents in an opinion in which STEVENS, P. J., concurs.

Order, Appellate Term, First Department, entered on December 1, 1970, affirmed. Plaintiff-respondent shall recover of defendant-appellant $50 costs and disbursements of this appeal.