Oscar Murov, J.
This is an action by plaintiff real estate broker to recover commissions. The parties have stipulated to an agreed statement of facts, which the court summarizes as follows:
1. A multiple listing agreement was entered into by the parties on February 23, 1973, whereby an exclusive right to sell was granted to the plaintiff by defendant which right was to terminate at the expiration of six months; more specifically, August 23, 1973.
2. Except for one occasion when plaintiff called on the telephone to arrange to show the premises, but was refused permission because the premises were in disarray, no prospective purchasers were ever presented by the plaintiff.
3. Defendant entered into another contract on June 18, 1973 to sell the premises through another broker, but the new contract provided that it was subject to the above multiple listing agreement and that no closing pursuant to said contract would take place until after August 24, 1973.
4. The premises were, in fact, sold by defendants on August 30, 1973 after the multiple listing agreement had expired.
*774 The parties stipulated also to facts concerning plaintiff’s knowledge of the second agreement and to the pendency of foreclosure proceedings by the mortgagee bank, but these facts are not critical to the resolution of the dispute.
The parties submit copies of the broker’s agreement dated August 23, 1973. Nothing is alleged by either party with respect to the disparity between the dates stated in the agreement and in the stipulated facts. The court draws no conclusions therefrom.
The multiple listing agreement contains one provision upon which the rights of the parties are hinged, “ It is understood that the uiider signed owner is not to employ any other broker for the purposes above-stated during the term of this contract or to personally sell or rent all or any part thereof. ’ ’
Defendant seems to contend that sale of the premises, after proper termination of the multiple listing agreement by expiration does not constitute a breach, while it is the plaintiff’s position that defendant violated the provision quoted herein-above merely by employing another broker.
Defendant further contends there was no consideration and that even if there was a contact, it expired before the house was sold. Defendant argues also that the provisions of the contract relied upon by the plaintiff are so unconscionable that they ought not to be enforced by the court, especially since plaintiff’s failure to advertise or to show the premises is so lacking in good faith as to preclude his right to recovery for any possible breach.
The first two of defendant’s arguments can be disposed of immediately.
The motion that there was no consideration to support defendant’s promise must be rejected outright (12 0. J. ¡3., Brokers, § 94, n. 7) and the stipulation of the parties attests to the fact claimed by defendant that the sale took place after the contract expired.
Although the theory that “ unconscionable agreements ought not to be enforced ” has been extensively applied in contracts for the sale of goods (Uniform Commercial Code, § 2-302) the principles set forth in the code have been extended to cover other transactions. (Seabrook v. Commuter Housing Co., 72 Misc 2d 6.) “ The doctrine of conscionability is used by the courts to protect those who are unable to protect themselves and to prevent injustice, both in consumer and non-consumer areas.” (p. 10.) Seabrooh cites a Federal Circuit Court decision (Williams v. Walker-Thomas Furniture Co., 350 F. 2d 445) where the finding was made that unequal bargaining powers *775 and the absence of a meaningful choice on the part of one of the parties, together with contract terms which unreasonably favor the other party, may spell out unconscionability.
Defendant protests that the plaintiff completed the contract form with a six-month exclusive rather than the usual one or two-month exclusive, without notifying defendant’s attorney, “ even though plaintiff was aware of the name, address and phone number of defendant’s attorney.”
While the court does not recognize the existence of any such obligation on the part of brokers under circumstances such as these, it cannot help but reflect how effective voluntary acts of brokers along these lines would be in dispelling a suggestion of bad faith or in elevating the regard in which real estate brokers are generally held by the public. The practice of referring a consumer to his attorney, when it is known that one exists, is an ethical consideration an appropriate real estate board might find advisable to prescribe for its members.
We come down now to the crux of the matter. Assuming that an exclusive right to sell for a term of six months, though unusual, does not invalidate an agreement that is fair in all other respects, what is the understanding of the parties? The exclusive right to sell confers upon a broker something more than an exclusive agency. Whereas an exclusive agency prevents seller from placing the property in the hands of another broker without subjecting himself to a suit for damages for breach of contract upon sale by another broker (Slattery v. Cothran, 210 App. Div. 581) a seller becomes liable for commissions even though he effects a sale himself under an exclusive right of sale (Gaillard Realty Co. v. Rogers Wire Works, 215 App. Div. 326).
This principle is recaptured in the provision of the contract relied upon by the plaintiff. It states as follows, “ The undersigned is not to employ any other broker for the purposes above stated (to sell the house within six months from the date of the contract) during the term of this contract or to personally sell or rent all or any part thereof.” The broker was employed not to sell the premises during the term of the multiple listing agreement, but after it had terminated by expiration.
The facts herein are almost squarely in point with Bagley v. Butler (59 Misc 2d 1029). Both cases involve an exclusive right to sell lasting for a term of six months. In each case, a contract to sell was entered into between the seller and a vendee during the term of the exclusive. The contract was not fully completed in either case until after the exclusive had terminated. In awarding judgment for the plaintiff broker in Bagley the *776 court said (p. 1031): “ From the defendants ’ affidavit, it appears that they entered into contract on September 21, 1968. All parties agree here that such date was within the period the agency contract was in effect. It is apparently undisputed that such a contract was not fully and completely executed until January 23, 1969.' However, after September 21, 1968, the equitable title to the property was in the vendees and the defendants here had sold their interests. The plaintiff here could no longer sell on behalf of the defendants, pursuant to the agency contract, for the defendants had divested themselves of the interest to be sold.”
In Hunt Real Estate Corp. v. Smallidge (66 Misc 2d 730, app. dsmd. 330 N. Y. S. 2d 784), the same rationale was adopted in awarding judgment to a broker where a seller, some two weeks before the date the agency was set to expire, granted an option to purchase to another. Here, the court said (p. 731), “ The option [to purchase] bound the owners to the optionee and/or his assigns and suspended their right to sell the premises to anyone else during the life of the option.”
The contract to sell herein was subject to the multiple listing agreement of February 23, 1973 and did not prevent the plaintiff from rendering his performance under the contract.
To apply a construction to the provision that inhibits defendant’s freedom to contract under circumstances that do not encroach in any way upon plaintiff’s employment under the contract is unwarranted, as it would tend to render the provision unconscionable.
It is the opinion of the court that defendant’s action did not constitute a breach of contract and judgment, accordingly, is rendered in his favor.