DONALD ZUCKER COMPANY,
Plaintiff,

v.

PRIME PROPERTIES, INC. and Gilbert
L. Dozier, Defendants.

No. 73 Civ. 2042.

United States District Court,
S. D. New York.

March 17, 1975.

934

Jay J. Gurfein, New York City, for plaintiff.

Breed, Abbott & Morgan, New York City, for defendants.

## MEMORANDUM

STEWART, District Judge:

Plaintiff Donald Zucker Company ("Zucker"), a New York corporation engaged in the loan brokerage business, brought suit against defendants Prime Properties ("Prime"), a Louisiana corporation, and Gilbert L. Dozier, an officer and shareholder of Prime, for breach of a brokerage commission agreement.[1] Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure contending there are no material factual issues in dispute. For the reasons set forth below, defendants' motion is granted.

Although plaintiff opposes summary judgment, the material facts are not in dispute. In the Summer of 1972, defendant Dozier and a partner possessed contractual rights and options to purchase a tract of commercial land in Baton Rouge, Louisiana from four selling interests. In order to acquire the property under these rights, Dozier needed substantial sums of cash by late March and early April of 1973. To this end, Prime was set up to obtain a land loan from an institutional lender and to take title to the property.

In the Fall of 1972, a representative of plaintiff Zucker contacted defendant Dozier and discussed the possibilities of having Zucker secure the loan from a lending institution on Dozier's behalf. On January 25, 1973, a Zucker form brokerage commission agreement was presented to defendant Dozier. After various changes had been made, Zucker and Dozier executed the agreement dated that day. Plaintiff Zucker alleges in its complaint that it earned its commission under that agreement by producing an acceptable loan commitment from a lending institution, Institutional Investors Trust ("IIT").

There is no dispute over the written provisions of the agreement between Zucker and Prime. The agreement provided for a 21-day period of exclusive authorization for Zucker to obtain a commitment from IIT acceptable to defendants in the principal sum of 2.8 million dollars. The deadline for a commitment, therefore, was February 15, 1973. In addition, the agreement provided that "the loan must be funded no later than March 25, 1973."

It is also undisputed by the parties that defendants received no commitment either orally or in writing during the 21-day period provided in the agreement. However, on February 23, 1973, Institutional Property Advisers, Inc., ("IPA"), an IIT subsidiary acting as its investment advisor, gave defendant Dozier a proposed commitment in a letter dated February 21, 1973.

Defendants, finding this proposal unacceptable, replied on the same day "accepting" the proposal with certain detailed changes. Between March 8 and March 12, 1973, defendant Dozier received a new letter from IPA dated March 6, 1973, amending its prior proposed commitment on behalf of IIT. Defendants again found this proposal unacceptable and on March 13, 1973 informed Zucker that their agreement had by its terms expired and that it was rejecting the amended commitment of IIT.

Subsequently, defendants obtained a commitment for the land loan from an-

---

1. While not specified in the complaint as required by the court rules, we assume that jurisdiction is predicated upon diversity of citizenship. 28 U.S.C. § 1332. In disposing of this motion, therefore, we look to New York State law.

other institution through the services of another broker.

Plaintiff argues, in opposition to summary judgment, that essentially three factual issues are in dispute: (1) whether the brokerage agreement was extended beyond its termination date of February 15, 1973 by the continued negotiations between plaintiff, defendants and IIT after that date; (2) whether plaintiff fulfilled its obligations under the brokerage contract by delivering the revised commitment; and (3) whether any fraud was committed by defendants either concerning the selection of J. T. Dorion ("Dorion") to appraise the property which provided the basis for the loan amount or concerning the loan finally obtained by Prime through the services of another broker.

■ Summary judgment may be granted unless the issues raised present a genuine issue of material fact. Schwartz v. Associated Musicians of Greater New York, Local 802, American Federation of Musicians of U. S. and Canada, 340 F.2d 228 (2d Cir. 1964); Dressler v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964). We find here that each of the above-enumerated issues raised by plaintiff fail either to raise a genuine issue or to present a dispute as to a material fact.

■ Plaintiff first contends that the brokerage agreement which expired by its terms on February 15, 1973 was extended by the continued negotiations between plaintiff, defendants and IIT after that date. Plaintiff states that "[o]n February 22, 1973, both plaintiff and defendant were aware that plaintiff was not acting gratuitously and expected to be compensated." (Plaintiff's Rule 9(g) statement ¶ e). While we may sympathize with plaintiff, it is axiomatic that a broker is not entitled to receive a commission for unsuccessful attempts to perform a brokerage agree-

ment. *See* Murray Adler Realty Co. v. Benerofe, 42 A.D.2d 715, 345 N.Y.S.2d 1023, aff'd, 34 N.Y.2d 583, 354 N.Y.S.2d 947, 310 N.E.2d 543 (1973). Consequently, we must agree with defendants that once the brokerage agreement had expired by its terms, there was no obligation upon defendants to accept any offer obtained by Zucker as broker and Prime incurred no liability to pay a brokerage fee in the absence of an agreement. See Hewitt v. Renn, 286 App.Div. 1145, 145 N.Y.S.2d 768 (1955); Burman Realty of Lindenhurst, Inc. v. Allen, 76 Misc.2d 773, 351 N.Y.S.2d 516 (1973).[2]

■ We turn now to plaintiff's contention that it fulfilled the terms of the brokerage agreement. In order to make out a prima facie case here for a brokerage commission, plaintiff must introduce evidence not only that an agreement existed, but also that a lender was produced ready, willing and able to meet the terms of the loan set forth in the agreement. Lane-Real Estate Department Store, Inc. v. Lawlet Corp., 28 N.Y.2d 36, 319 N.Y.S.2d 836, 268 N.E.2d 635 (1971); Carnegie v. Abrams, 37 A.D.2d 327, 325 N.Y.S.2d 326 (1971); Penzotti v. Broda Machine Co., 37 A.D.2d 340, 325 N.Y.S.2d 228, aff'd 33 N.Y.2d 815, 350 N.Y.S.2d 908, 305 N.E.2d 917 (1971); Trade Properties, Inc. v. Ziminski, 75 Misc.2d 606, 348 N.Y.S.2d 476 (Sup.Ct.1973). Plaintiff has failed to produce enough evidence to establish a prima facie case or to raise a sufficient factual question as to whether it complied with the brokerage agreement to preclude summary judgment.

■ Plaintiff contends that defendants by their actions agreed to alterations in the terms originally set forth in the brokerage agreement, because when IIT made its proposed commitment on February 23, 1973, defendants continued to negotiate with IIT. Somehow, plaintiff argues, through these negotiations which never evolved into an agreement,

---

2. In addition, we note that the second deadline set by defendants in the agreement, that is for the actual funding of the loan, was

also never met, since IIT never reached an agreement with Prime for the closing date. (See *infra* p. 936).

defendant agreed to different terms. This argument is without merit. A principal has no obligation to accept any terms other than the ones originally set forth no matter how reasonable those new terms may be. *See* Amott, Baker & Co. v. Bing, 13 Misc.2d 797, 155 N.Y.S. 2d 550, 551 (Sup.Ct.1956), aff'd 3 A.D. 2d 706, 160 N.Y.S.2d 805 (1957).

■ The standard by which the broker's performance is to be measured is to be found in the brokerage agreement, not the agreement or proposed agreement between buyer and seller. Sanders A. Kahn Associates, Inc. v. Maidman, 69 Misc.2d 90, 329 N.Y.S.2d 121, 123 (Sup. Ct.1971).

■ Plaintiff has cited us to no case or New York law, and we have found none, which in any way alters the basic requirement that a broker must produce a party willing to comply exactly with the material terms set forth by the employer in order to be entitled to a commission. *See* House v. Hornburg, 267 A.D. 557, 563, 39 N.Y.S.2d 20 (1944), aff'd 294 N.Y. 750, 61 N.E.2d 748 (1945); 6 N.Y.Jur., Brokers, § 111. In other words, for Zucker to recover its commission, Prime and the lender needed to arrive at a meeting of the minds with respect to all the essential contract terms, an understanding which never was reached in this case. *See* Murray Adler Realty Co. v. Benerofe, 42 A.D.2d 715, 345 N.Y.S.2d 1023, aff'd 34 N.Y.2d 583, 354 N.Y.S.2d 947, 310 N.E.2d 543 (1973) (granting summary judgment).

■ Plaintiff Zucker has not raised a sufficient factual question concerning whether IIT met the loan terms set forth by Prime to entitle it to a trial in this case. There are many requirements Prime claims were never met. We mention only two such requirements which are clearly vital to any loan agreement and which, therefore, if not met by the lender, would be proper grounds for Prime to refuse to complete the agreement. These two items are the time for obtaining and funding the loan and the amount of the loan.[3]

The brokerage commission agreement specified that Zucker had to obtain a loan commitment for Prime by February 15, 1973 and that the loan had to be funded no later than March 25, 1973. In the proposed commitment made by IIT on February 21, 1973, IIT proposed that the closing should occur within 90 days of that date. When Prime conditionally accepted IIT's proposed commitment, it made various changes. One such change related to the 90-day closing clause. Prime changed that clause to require the closing within 60 days or upon 10 days notice from Prime to IIT. In IIT's revised proposed commitment of March 6, 1973, IIT accepted the 60-day closing requirement as set forth by Prime but omitted the 10 day notice alternative. Defendants claim that this revision was unacceptable to them since the March 25, 1973 deadline originally set in the brokerage agreement was close at hand and there was a possibility that Prime might require the money before the late April deadline encompassed by the 60-day closing clause. It does not appear from these negotiations that Prime ever indicated that it was no longer concerned with the time for funding the loan and therefore we do not find a sufficient factual question raised concerning a possible waiver of a deadline for such closing as a material element of the agreement which Zucker was required to meet in order to be entitled to a brokerage commission. This conclusion is additionally supported by the fact that no meeting of the minds

---

3. In a real estate brokerage commission case, the New York Appellate Division held that something "more substantial than mere agreement on price and closing date is required" to entitle a broker to his commission. "The parties must be brought to an agreement with respect to all essential terms customarily encountered in such transactions before the broker's commissions are earned." Penzotti v. Broda Machine Co., 37 A.D.2d 340, 325 N.Y.S.2d 228, 230 (1971). *See also* Lemar v. Tenber, 41 A.D.2d 907, 343 N.Y.S.2d 295 (1973) (agreement on price alone is insufficient).

ever took place between Prime and IIT on any change in that deadline.

The second material item in the agreement was the principal amount of the loan. The brokerage agreement provided that Zucker was to obtain for Prime a loan acceptable to Prime with a principal of $2.8 million. The February 21, 1973 proposed commitment from IIT authorized a two million dollar disbursement for the acquisition cost of the property [with] the balance to be held in reserve to pay interest on the IIT loan as it became due and to be added to the IIT principal. This provision, requiring an $800,000 interest holdback and thereby reducing the loan's principal to two million dollars, was unacceptable to Prime. Its February 23, 1973 conditional acceptance added the following clause to the above IIT proposal: "Otherwise, the interest due annually shall be advanced on this loan up to a maximum of $800,000 or a total loan of $2,800,000." While IPA agreed on behalf of IIT to include this clause in its counterproposal of March 6, 1973, it added a new requirement that the loan amount not exceed 75 percent of the appraisal approved by IIT. Since the IIT appraiser valued the land at only two million dollars, this new requirement reduced the principal amount available to Prime to 1.5 million dollars. Prime contends that this amount was totally unacceptable and that it never indicated that it was willing to accept such a low amount. Zucker has produced no evidence that Prime ever agreed to such a change in the principal amount required by their brokerage agreement. Thus, Zucker has failed in at least these two respects to show that it produced a lender ready, willing and able to lend the agreed amount on the terms set forth by the brokerage agreement or any other terms acceptable to Prime.[4]

We turn now to the third factual issue claimed by plaintiff to be in dispute. The one exception to the requirement that a broker must meet the time element of the agreement occurs when there is fraud or bad faith on the part of the employer. That is, if the employer unduly prolongs negotiations past a deadline or speciously claims there is no consensus on the terms specified in order to avoid paying a commission to the broker, an issue of bad faith is raised. See Carnegie v. Abrams, 37 A.D.2d 327, 325 N.Y.S.2d 326 (1971). In support of this allegation, first raised by plaintiff in its brief in opposition to summary judgment, plaintiff states that fraud may be "inferred" both from the loan commitment which Prime procured through a new broker on March 19, 1973 and from three different appraisals made of the land.

Plaintiff presents no evidence whatsoever to show that defendants entered into a brokerage agreement with another broker during plaintiff's 21-day exclusive agreement with Prime. Plaintiff thus does not raise a genuine issue of fact sufficient to preclude summary judgment. Our decision, however, would be the same even if plaintiff produced such evidence. The fact remains that IIT never made an offer which either comported with the terms of the brokerage agreement or was acceptable to Prime. Any agreement which defendants might have made with another broker and which might have subjected Prime to liability in the event that a loan was procured by such other broker during the exclusive brokerage term of Zucker's agreement, did not prevent Zucker from obtaining a lender ready, willing and able to meet the terms set forth by Prime. Burman Realty of Lindenhurst, Inc. v. Allen, 76 Misc.2d 773, 351 N.Y.S.2d 516 (1973).

4. Since we find that there is no evidence of any agreement between Prime and IIT which might alter the terms of the brokerage agreement, we need not reach the question raised by defendants of whether any such alterations would have to be in writing. See New York General Obligations Law McKinneys' Consol.Laws, c. 24–A, § 5–1105.

The second inference which plaintiff claims can be drawn to support an allegation of fraud—that the Dorion appraisal was lower than two other appraisals made at different times on the same land—hinges on what plaintiff called "a sharp and serious issue of fact" over who selected the appraiser.[5] It appears that plaintiff's allegation of fraud by defendants through some collusion with Dorion is without any foundation in fact. Plaintiff claims such collusion is possible because defendants chose Dorion as the appraiser.[6] Again, there is no evidence to substantiate that allegation. Indeed, the facts are to the contrary. The depositions of Zucker employees, Dennis Frank and Thomas Lippmann, show that the appraiser called for in the IIT proposed commitment was too busy to meet the time requirements (Frank dep., p. 70) Lippmann dep., p. 55), and that IIT itself subsequently chose Dorion. Prime was merely notified that Dorion would be the appraiser; it was not even consulted, according to the Zucker employees' depositions. (Lippmann dep., p. 55) (Dozier affidavit, ex. 7). In addition, in the joint affidavit of Dozier and his partner Leblanc, they categorically deny plaintiff's allegations. "We can state categorically that no discussion whatsoever was had by any representative of defendants with Mr. Dorion concerning his proposed appraisal valuation. . . ." (Dozier-Leblanc affidavit, at 2).[7]

In sum, since there is no evidence presented which raises a genuine issue of fact concerning fraud or bad faith on the part of defendants here, nor any evidence which raises a genuine issue concerning any material fact in this case, summary judgment for defendants is granted.[8]

So ordered.

5. The appraisal amount became even more vital once IIT limited the loan's principal to 75 percent of that appraised value. Defendants contend that IIT chose Dorion as the appraiser because he was known to give low appraisals. Defendants claim this choice led them to believe that IIT was no longer sincere in its interest to fund the loan.

6. Plaintiff further alleges that defendants received the appraisal report directly from Dorion. We note, for whatever import it may have, that the only evidence presented shows, to the contrary, that Prime received the appraisal from IIT (Frank dep., exhibit 55).

7. While plaintiff made no further arguments for the position that defendants operated in bad faith, we note that plaintiff might wish to rely on a claim that Prime unreasonably refused to close the loan by claiming that material terms were not met which had in fact been met. The standard used to make such a determination is "whether there is a genuine lack of consensus or a deliberate attempt to escape liability by attributing the failure of negotiations . . . on an afterthought." Carnegie v. Abrams, 37 A.D.2d 327, 325 N.Y.S.2d 326, 327 (1971). The analysis above of the time and principal loan amount requirements set forth by Prime in the brokerage agreement and in subsequent negotiations with IIT, and which were never met by IIT, would clearly foreclose this avenue to plaintiff.

8. Defendants, in their brief in support of summary judgment, raise a further question of whether a fully disclosed agent, in this case defendant Dozier, contracting on behalf of his principal, Prime, can be held personally liable on the contract. Our disposition of defendants' summary judgment motion makes it unnecessary to consider this question.