■ MOCCA LOUNGE, INC., Appellant, v JOHN MISAK et al., Respondents. — In an action to recover damages for, *inter alia,* defendants' breach of a contract to purchase a tavern and bar business, plaintiff appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Nassau County (Murphy,

J.), entered June 25, 1982, as, at the close of plaintiff's case, dismissed the first cause of action on the ground that the contract relied on by plaintiff is unenforceable for uncertainty and indefiniteness. Judgment affirmed insofar as appealed from, with costs. On January 8, 1981, the parties entered into a written contract wherein plaintiff agreed to sell and defendants agreed to purchase plaintiff's tavern and bar business located at 3001 Merrick Road, Wantagh, New York. Plaintiff did not own the premises which housed its tavern and bar business. Consequently, paragraph six of the contract of sale required defendants to obtain a lease for the premises as a condition precedent to the sale. The paragraph provided that the lease was to be for a term of 10 years at a rental of $1,700 per month. Additionally, the lease would include an option to purchase and would contain a provision requiring defendants to pay, as additional rent, any increase in the real estate taxes assessed on the building and to deposit two months rent as security. No time limitation for obtaining the lease was specified. On the same date as the execution of the contract of sale, the parties also executed an employment agreement which merely provided that defendants would be employed as managers of the business, effective January 16, 1981, at a weekly salary of $100 each. Neither contract spelled out the rights and obligations of the parties during the period between the date of the execution of the contract and the closing date of the sale, or the obligations and rights of the parties in the event a lease could not be secured. Prior to executing the contract of sale, defendants had negotiated the essential terms of the lease with the landlord of the premises which were subsequently enumerated in paragraph six of the contract of sale. Additionally, the landlord agreed to make an application for a variance to enable defendants to use the back room of the premises in connection with the business, a use barred by the local zoning ordinance. The lease tendered to defendants contained provisions at variance with the terms which the landlord had previously negotiated with defendants. Most notably, it contained a clause providing for an annual increase in rent in an amount equal to the cost of living index, a similar clause applicable to the option to purchase, and a clause fixing the responsibility and cost for obtaining a variance for the use of the back room upon defendants. Terms which were not the subject of prior negotiations were also included in the proffered lease, such as a clause making the tenant responsible for the maintenance of the air-conditioning units, refrigeration units, and the plumbing, heating and electrical systems of the demised premises. Defendants rejected the lease as unacceptable and notified plaintiff that they were canceling the contract of sale. Before plaintiff may secure redress for breach of a promise, the promise made by defendant must be sufficiently certain and specific so that the parties' intentions are ascertainable. Definiteness as to material matters is of the very essence of contract law; impenetrable vagueness and uncertainty will not suffice (*Martin Delicatessen v Schumacher,* 52 NY2d 105, 109). Under the circumstances of this case, it is clear that plaintiff and defendants never reached an agreement as to the material terms that the anticipated commercial lease would have to contain before defendants would be obligated to accept the lease in order to avoid a breach of the contract of sale. For example, conspicuously absent from the contract was any reference with respect to designating which party, landlord or tenant, would bear the burden of applying for a variance to enable the back room of the demised premises to be used as contemplated by tenant. Other glaring omissions concerned the maintenance obligations of the tenant and the type and amount of liability insurance that the tenant would be required to carry in order to indemnify the landlord. Trial Term correctly declined to supply the material terms by implication, since in this case, "the void is too

great, the omissions are too noticeable and the risk of ensnaring a party in a set of contractual obligations that he never knowingly assumed is too serious" (*Ginsberg Mach. Co. v J. & H. Label Processing Corp.*, 341 F2d 825, 828). The lease tendered by the landlord not only proposed material terms which were never the subject of negotiations between the parties or between defendants and the landlord, but also contained a rental which was contrary to the fixed rent specified in paragraph six of the contract of sale. Nevertheless, plaintiff argues that from the nature of the contract there arose an implied promise on the part of defendants to make a reasonable, good-faith effort to obtain a lease which would be acceptable to them, within a reasonable period of time. Plaintiff contends that this court should imply, as a requirement of reasonable good-faith effort, a duty on defendants' part to have, (1) tendered their own version of an acceptable lease to the landlord, and (2) renegotiated the objectionable terms of the proposed lease with the landlord. It is true that where the parties are under a duty to perform an obligation which is definite and certain, the courts will imply and enforce a duty of good-faith performance, including good-faith negotiations, in order that a party not escape from the obligation he has contracted to perform (see *Matter of De Laurentiis [Cinematografica de las Americas, S.A.]*, 9 NY2d 503; *Rowe v Great Atlantic & Pacific Tea Co.*, 46 NY2d 62; *Gordon v Nationwide Mut. Ins. Co.*, 30 NY2d 427; *Wood v Duff-Gordon*, 222 NY 88; *Carnegie v Abrams*, 37 AD2d 327). However, even when called upon to construe a clause in a contract expressly providing that a party is to apply his best efforts, a clear set of guidelines against which to measure a party's best efforts is essential to the enforcement of such a clause (see *Cross Props. v Brook Realty Co.*, 76 AD2d 445; accord *Candid Prods. v International Skating Union*, 530 F Supp 1330; *Pinnacle Books v Harlequin Enterprises*, 519 F Supp 118). No objective criteria or standards against which defendants' efforts can be measured were stated in the contract of sale and they may not be implied from the circumstances of this case. To imply the terms suggested by plaintiff would be to impermissibly make a new contract for the parties rather than to enforce a bargain the parties themselves had reached. Accordingly, the contract of sale was unenforceable on the ground of uncertainty and vagueness, and plaintiff's first cause of action was properly dismissed. Mangano, J. P., Gibbons, Bracken and Niehoff, JJ., concur.