(October 24, 1988)

■ MARTIN BERNSTEIN et al., Appellants, v R. NORMAN FELSKE et al., Respondents.—In an action for specific performance of an alleged joint venture agreement and to recover damages for the breach thereof, the plaintiffs appeal from an order and judgment (one paper) of the Supreme Court, Suffolk County (Gowan, J.), entered December 8, 1987, which granted

defendants' motion for summary judgment and dismissed the complaint.

Ordered that the order and judgment is affirmed, with costs.

The defendant Broad Cove, Inc., is a corporation which owns 105 acres of waterfront property in Aquebogue, New York. The defendant R. Norman Felske is the sole shareholder of Broad Cove, Inc. On February 16, 1985, Felske and the plaintiffs executed a "letter of intent" to form a joint venture for the purpose of developing a condominium project on the Aquebogue property. By terms of the letter of intent, Felske was to contribute the Aquebogue property to the enterprise in return for $12,500,000 and a 12.5% interest in the venture.

The letter of intent specifically contemplated the drafting of a formal joint venture agreement, which would contain provisions (1) limiting the amount of loans, (2) restricting transfer of each venturer's interest, and (3) delineating management responsibility. The letter of intent provided that it would cease to be binding upon the parties unless formal agreements were executed on or before March 1, 1985. This deadline was extended by consent of the parties to March 7, 1985, but it is undisputed that formal agreements were never executed.

According to the plaintiffs, at a meeting between the parties held on March 7, 1985, Felske demanded that the deal outlined in the letter of intent be restructured into a sale of Broad Cove, Inc.'s, stock, and that the plaintiffs arrange a $350,000 personal loan for him to be secured by his residence.

The plaintiffs' contend that Felske's March 7, 1985, demands were made in a bad-faith attempt to escape his contractual obligations so that he could sell the property to a third party for $16,000,000. Felske claims the parties were simply never able to agree on all terms of a formal contract, and points out that the real estate contract proposed by the plaintiffs contained terms at variance with those outlined in the letter of intent, most notably a provision that he deliver the property free from a notice of pendency.

The court properly granted the defendants' motion for summary judgment. Before the plaintiffs may secure redress for breach of a promise, the promise made by the defendant must be sufficiently certain and specific so that the parties' intentions are ascertainable (*Martin Delicatessen v Schumacher*, 52 NY2d 105, 109; *Mocca Lounge v Misak*, 94 AD2d 761). Definiteness as to material matters is of the very essence of contract law, for without it a court could not intervene without imposing its own conception of what the parties

should or might have undertaken, rather than confining itself to a bargain to which they have mutually committed themselves *(Martin Delicatessen v Schumacher, supra,* at 109). Dictated by these principles, it is well settled that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable *(Martin Delicatessen v Schumacher, supra,* at 109; *Willmott v Giarraputo,* 5 NY2d 250, 253). In the case at bar, the letter of intent leaves for future negotiation provisions for limiting the amount of loans, restricting transfer of each venturer's interest, and delineating management responsibility. Absent any indication in the letter of intent of an objective method, independent of each party's mere wish or desire, upon which to make these provisions definite *(see, Martin Delicatessen v Schumacher, supra,* at 110; *Four Seasons Hotels v Vinnik,* 127 AD2d 310, 315), we must decline to supply them by implication, since in this case, " 'the void is too great, the omissions are too noticeable and the risk of ensnaring a party in a set of contractual obligations that he never knowingly assumed is too serious' " *(Mocca Lounge v Misak, supra,* at 762-763; *Ginsberg Mach. Co. v J.&H. Label Processing Corp.,* 341 F2d 825, 828).

The plaintiffs' further contention that from the nature of the letter of intent there arose an implied promise on the part of the defendants to negotiate the terms of a formal agreement in good faith is similarly unavailing. It is true that where the parties are under a duty to perform an obligation which is definite and certain, the courts will imply and enforce a duty of good-faith performance, including good-faith negotiations, in order that a party not escape from the obligation he has contracted to perform *(see, Matter of De Laurentiis [Cinematografica de las Americas],* 9 NY2d 503; *Mocca Lounge v Misak, supra,* at 763). However, even when called upon to construe a clause in a contract expressly providing that a party is to apply his best efforts, a clear set of guidelines against which to measure a party's best efforts is essential to the enforcement of such a clause *(see, Mocca Lounge v Misak, supra,* at 763; *accord, Candid Prods. v International Skating Union,* 530 F Supp 1330; *Pinnacle Books v Harlequin Enters.,* 519 F Supp 118). No objective criteria or standards against which the defendants' efforts can be measured were stated in the letter of intent, and they may not be implied from the circumstances of this case. Accordingly, the letter of intent was unenforceable on the ground of uncertainty and vagueness, and the complaint was properly dismissed. Finally, we note that both the letter of intent and a transmittal letter

from the plaintiffs' attorney dated March 5, 1985, which accompanied copies of proposed agreements sent to the defendants' attorney, conclusively established the parties' intent not to be bound until formal agreements were signed (cf., Schenck v Francis, 26 NY2d 466). Mollen, P. J., Kunzeman, Rubin and Eiber, JJ., concur.