OPINION OF THE COURT
Jack M. Battaglia, J.
*687 In a utility bill auditing agreement, plaintiff Ashokan Water Services, Inc. agreed to “use its best efforts to bring about saving[s] in . . . past, current and future utility bills to” property located at 530 St. Paul’s Place in the Bronx. In return, defendant 3716 Third Avenue, LLC, the owner of the property, and defendant New Start, LLC, the manager of the property, agreed to pay plaintiff “an amount calculated as one third (1/3) of all credits and of all favorable adjustments to Ghent’s water/sewer utility accounts made on or after the date of [the] contract, such payment to be due immediately after receipt by Client of such credit(s) and/or adjustment(s).” Although the agreement shows only defendant New Start as client, defendants’ verified answer admits that both defendants are obligated under it. (See notice of appearance, verified answer, affirmative defenses and counterclaim 1i 4.)
There is no dispute that subsequent to the effectiveness of the agreement the Department of Environmental Protection (DEP) posted credits totaling $48,226.17 to six water/sewer utility accounts for the property; that with an invoice dated June 11, 2003 plaintiff billed defendants for $16,073.78, its “Contingency [f]ee of 1/3” the amount of the credits; and that defendants made two payments against the invoice, totaling $8,000, but then refused to pay any more.
In its verified complaint, plaintiff seeks the balance due on its invoice, $8,073.78, together with prejudgment interest and attorney fees, alleging causes of action for breach of contract, on an account stated, for money had and received, and for unjust enrichment. Defendants’ notice of appearance, verified answer, affirmative defenses and counterclaim denies any obligation for additional payment on the invoice, and seeks a return of the $8,000 paid, allegedly by mistake, also with prejudgment interest and attorney fees. The essential ground for defendants’ denial of any obligation for additional payment and for return of amounts already paid is that plaintiff allegedly failed to perform as required under the agreement.
Plaintiff now moves for summary judgment on its cause of action for breach of contract. On a motion for summary judgment, the movant has the initial burden of establishing prima facie, with evidence in admissible form, that it is entitled to judgment as a matter of law; the burden then shifts to the nonmoving party to demonstrate the existence of a triable issue of fact. (See LD Exch. v Orion Telecom. Corp., 302 AD2d 565, 565 [2d Dept 2003].) The court notes that neither plaintiff nor defendants *688 have made any objection to the admissibility of any of the documents attached to the affidavits submitted in support of, or in opposition to, plaintiffs motion.
In support of its motion, plaintiff has submitted the affidavit of Hershel Weiss, its president and a licensed master plumber. Mr. Weiss supports the factual bases for plaintiffs cause of action, as outlined above, and describes plaintiffs performance under the contract. Essentially, plaintiff inspected the property, its water pipes and meters; reviewed Department of Environmental Protection account records with respect to the property; analyzed the data, and discussed it with DEP representatives; and demonstrated to DEP that it had over-billed the property for water/sewer use. According to Mr. Weiss:
“DEP had overcharged and was continuing to overcharge the property for water/sewer use by charging the property for its actual water consumption measured by a meter on the main-line on one account while concurrently charging the property for some of the same water consumption measured by other meters located downstream of that meter; made-up consumption estimates for meters that did not exist and which could only have been downstream of the house-meter anyway; and for flat-rate charges which are inappropriate where the consumption registered by the house-meter is already charged.” (Affidavit in support of summary judgment 1i 9.)
With a DEP accounts receivable transaction history for each of the accounts at the property and a letter dated June 13, 2003 from the DEP to plaintiff, plaintiff shows that the credits were posted, and that the credits were a consequence of plaintiffs efforts on defendants’ behalf.
In opposition, defendants present the affidavit of Alfred Thompson, principal of defendant New Start, LLC and manager of defendant 3716 Third Avenue, LLC. Mr. Thompson does not dispute any of the factual bases upon which plaintiffs claim to its “contingency fee” rests. Mr. Thompson acknowledges the “one time reduction in past water and sewer bills,” but asserts that plaintiff failed “to use its best efforts to bring about savings in client’s past, current, and future utility bills.” Mr. Thompson contends that plaintiff breached the agreement in two ways: first, that plaintiff failed to inspect “the meter,” and, therefore, failed to determine that it was “defective,” with the result that plaintiff did not obtain a “full credit” from DEP; *689 and second, that the “consolidation” of the various accounts at the property has led to higher billings since, with the result that the credits that plaintiff did obtain were “removed” by the subsequent excessive billings. (See affidavit in opposition 1Í1Í 6-9.) “The answer to Defendant’s [sic] problem was not consolidating the different accounts; it was replacing the defective meter.” (Id. 11 8.)
In one of the leading cases applying an express “best efforts” provision, Judge Friendly commented that “the New York law is far from clear” (see Bloor v Falstaff Brewing Corp., 601 F2d 609, 613 [2d Cir 1979]); 20 years later another federal court found it “murky” (see McDonald’s Corp. v Hinksman, 1999 WL 441468, *12, 1999 US Dist LEXIS 9587, *36 [ED NY, May 28, 1999]). It is still unclear when and how an express “best efforts” provision is to be enforced in the absence of articulated objective criteria in the agreement, and, particularly, the relationship between “best efforts” and “good faith,” “fair dealing,” and “reasonable care.”
There is authority in the Second Department that “[w]here ... a clause in an agreement . . . provides that a party must use its ‘best efforts’, it is essential that the agreement also contain clear guidelines against which to measure such efforts in order for such clause to be enforced.” (See Strauss Paper Co. v RSA Exec. Search, 260 AD2d 570, 571 [2d Dept 1999]; see also Cross Props. v Brook Realty Co., 76 AD2d 445, 453-454 [2d Dept 1980]; Northeast Sort & Fulfillment Corp. v Reader’s Digest Assn., 2001 NY Slip Op 40354[U], *14-15 [Sup Ct, Westchester County 2001].) In particular, courts will refuse to enforce an express “best efforts” provision, or to imply one where it is not expressed, in those situations in which it amounts to a dreaded “agreement to agree.” (See Richbell Info. Servs. v Jupiter Partners, 309 AD2d 288, 303-304 [1st Dept 2003]; Bernstein v Felske, 143 AD2d 863, 865 [2d Dept 1988]; Mocca Lounge v Misak, 94 AD2d 761, 763 [2d Dept 1983]; Jillcy Film Enters., Inc. v Home Box Off., Inc., 593 F Supp 515, 520-521 [SD NY 1984]; Pinnacle Books, Inc. v Harlequin Enters. Ltd., 519 F Supp 118, 121-122 [SD NY 1981].)
But numerous courts, including the New York Court of Appeals and the Second Department, have applied an express “best efforts” provision without articulated objective criteria, or implied one where it was not expressed. (See Van Valkenburgh, Nooger & Neville v Hayden Publ. Co., 30 NY2d 34, 43-46 [1972]; Wood v Duff-Gordon, 222 NY 88, 90-92 [1917]; Allen v Wil *690 liamsburgh Sav. Bank, 69 NY 314, 321-322 [1877]; Town of Roxbury v Rodrigues, 277 AD2d 866, 867 [3d Dept 2000]; Foster Wheeler Broome County v County of Broome, 275 AD2d 592, 593-594 [3d Dept 2000]; Lexington 360 Assoc. v First Union Natl. Bank of N. Carolina, 234 AD2d 187, 191 [1st Dept 1996]; Pfizer Inc. v PCS Health Sys., 234 AD2d 18, 18-19 [1st Dept 1996]; Kroboth v Brent, 215 AD2d 813, 814 [3d Dept 1995]; Foster v Citrus County Land Bur., 133 AD2d 665, 666 [2d Dept 1987]; Forward Indus. v Rolm of N.Y. Corp., 123 AD2d 374, 375 [2d Dept 1986]; Scientific Mgt. Inst. v Mirrer, 27 AD2d 845, 845-846 [2d Dept 1967]; Bloor v Falstaff Brewing Corp., 601 F2d at 612-615; US Airways Group, Inc. v British Airways PLC, 989 F Supp 482, 491 [SD NY 1997]; McDarren v Marvel Entertainment Group, 1995 WL 214482, *4-5, 1995 US Dist LEXIS 4649, *12-13 [SD NY, Apr. 11, 1995]; see also StoreRunner Network, Inc. v CBS Corp., 8 AD3d 127, 128 [1st Dept 2004]; but see Timberline Dev. v Kronman, 263 AD2d 175, 178-180 [1st Dept 2000].)
On a doctrinal level, at least, the cases can be reconciled by recognizing that there is no a priori rule precluding enforcement of a “best efforts” obligation even in the absence of articulated criteria, and that the obligation will be enforced where sufficient content may otherwise be read into it against which the promisor’s performance may be measured. Second Department opinions that appear to state such an a priori rule also suggest that in another case the circumstances might allow for the enforcement of the obligation. (See Bernstein v Felske, 143 AD2d at 865; Mocca Lounge v Misak, 94 AD2d at 763; see also Cross Props. v Brook Realty Co., 76 AD2d at 454 [“objective guidelines for enforcement . . . impliedly found”]; US Airways Group, Inc. v British Airways PLC, 989 F Supp at 491; McDarren v Marvel Entertainment Group, 1995 WL 214482, *4-5, 1995 US Dist LEXIS 4649, *12-13.)
There is, nonetheless, little in the case law that assists in the implication of objective “best efforts” criteria in a particular case, or that describes the relationship between a “best efforts” obligation and the obligations of “good faith,” “fair dealing,” and “reasonable care.” In what may be the earliest case in which the Court of Appeals addressed an express “best efforts” provision, the Court held that “it would have been a misleading of the jury” to instruct them in terms of “good faith” and “ordinary care and diligence” when the promisor had agreed to use “best efforts.” (See Allen v Williamsburgh Sav. Bank, 69 NY at 321.)
*691 Traditionally, “good faith” in New York has been a subjective concept. “ ‘[G]ood faith’ connotes an actual state of mind — a state of mind motivated by proper motive.” (Polotti v Flemming, 277 F2d 864, 868 [2d Cir I960].) “It encompasses, among other things, an honest belief, the absence of malice and the absence of a design to defraud or to seek an unconscionable advantage.” (Doyle v Gordon, 158 NYS2d 248, 259-260 [Sup Ct, NY County 1954]; see also Adler v 720 Park Ave. Corp., 87 AD2d 514, 515 [1st Dept 1982].) “The fact that a person could have adopted a more prudent course than the course taken does not prevent him from establishing that the course taken was one taken in good faith.” (Polotti v Flemming, 277 F2d at 868.)
The duty to act in “good faith” is linked with a duty of “fair dealing,” and those duties “encompass ‘any promises which a reasonable person in the position of the promisee would be justified in understanding were included.’ ” (See 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002], quoting Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62, 69 [1978].) The Uniform Commercial Code defines “good faith” for a commercial actor as “honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.” (See UCC 2-103 [1] [b].)
Defined by reference to the “reasonable person in the position of the promisee” and “reasonable commercial standards in the trade,” the duty of “fair dealing” appears to have added objective aspects to the duty of “good faith.” And “unless the parties have contractually bound themselves to a higher standard of performance, reasonable care and competence owed generally by practitioners in the particular trade or profession defines the limits of an injured party’s justifiable demands.” (Milau Assoc. v North Ave. Dev. Corp., 42 NY2d 482, 486 [1977].)
“Best efforts” requires “greater care and diligence” than the “ordinary care and diligence” to which the promisor would otherwise be bound to exercise. (See Allen v Williamsburgh Sav. Bank, 69 NY at 322.) And “ ‘best efforts’ requires more than ‘good faith’, which is an implied covenant in all contracts.” (Kroboth v Brent, 215 AD2d at 814.) And a promisor may be found to have breached a duty to use “best efforts,” even if it has not breached the implied duty of “fair dealing.” (See Van Valkenburgh, Nooger & Neville v Hayden Publ. Co., 30 NY2d at 46; see also Liu v Beth Israel Med. Ctr., 2003 WL 21488081, *3, 2003 US Dist LEXIS 10852, *7 [SD NY, June 26, 2003] [“the covenant of good faith and fair dealing does not include the requirement to use best efforts”].)
*692 Despite such explicit statements of distinction, the cases have not clearly articulated how a “best efforts” obligation alters or supplements the promisor’s overall standard of performance, and the verbal formulae that courts use when applying a “best efforts” obligation often confuse rather than clarify. Those formulae include: “due diligence” (see Van Valkenburgh, Nooger & Neville v Hayden Publ. Co., 30 NY2d at 45); “all reasonable methods” (see Town of Roxbury v Rodrigues, 277 AD2d at 867; Kroboth v Brent, 215 AD2d at 814); “reasonable efforts” (see Timberline Dev. v Kronman, 263 AD2d at 178; see also Scott-Macon Sec., Inc. v Zoltek Cos., 2005 WL 1138476, *14-15, 2005 US Dist LEXIS 9034, *40 [SD NY, May 12, 2005]); “good faith business judgment” (see Scott-Macon Sec., Inc., 2005 WL 1138476, *14, 2005 US Dist LEXIS 9034, *40); “genuine effort” (see Foster Wheeler Broome County v County of Broome, 275 AD2d at 594); and “active exploitation in good faith” (see Western Geophysical Co. of Am., Inc. v Bolt Assoc., Inc., 584 F2d 1164, 1171 [2d Cir 1978]).
Judge Friendly’s review of the cases “suggested] that under New York law, a ‘best efforts’ clause imposes an obligation to act with good faith in light of one’s own capabilities” (see Bloor v Falstaff Brewing Corp., 601 F2d at 613). His formula is still given currency. (See Farey-Jones v Buckingham, 2004 US Dist LEXIS 12480, *34 [ED NY, July 7, 2004]; McDarren v Marvel Entertainment Group, 1995 WL 214482, *5, 1995 US Dist LEXIS 4649, *13.) The element of the promisor’s “own capabilities” was adopted by Professor E. Allan Farnsworth in his treatise, describing the “best efforts” obligation as “such efforts as are reasonable in the light of that party’s ability and the means at its disposal and of the other party’s justifiable expectations.” (See 2 E. Allan Farnsworth, Contracts § 7.17, at 367 [3d ed 2004].)
Part of the difficulty in adequately articulating the “best efforts” obligation is that the obligation operates in different transactional settings, and can serve different purposes in those settings. “ ‘Best efforts’ can only be defined contextually.” (Victor P. Goldberg, Great Contract Cases: In Search of Best Efforts: Reinterpreting Bloor v. Falstaff, 44 St. Louis U LJ 1465, 1465 [2000].) A “best efforts” obligation that serves as an “earnout” in the purchase and sale of intangible assets (see id. at 1476-1481) must be understood and applied differently than the “best efforts” obligation that serves to protect the interests of one of the parties in an exclusive dealing agreement (see UCC 2-306 [2]).
*693 Or, as apparently in our case, the “best efforts” obligation may serve primarily as recognition that the promisor cannot control all of the factors that will affect the likelihood of a desired result, and is not willing, therefore, to promise to bring it about at risk of liability for breach. (See Lipsky v Commonwealth United Corp., 551 F2d 887, 896 [2d Cir 1976]; see also E. Allan Farnsworth, On Trying to Keep One’s Promises: The Duty of Best Efforts In Contract Law, 46 U Pitt L Rev 1, 1 [1984].) The question is, “How hard must one try if one has undertaken to use best efforts?” (Farnsworth, 46 U Pitt L Rev at 1.)
There is, of course, no more significant context for a “best efforts” obligation than the agreement of which it is a part or is made so. “A best efforts requirement must be reconciled with other clauses in the contract to the extent possible, not used as a basis for negating them.” (Vestron, Inc. v National Geographic Socy., 750 F Supp 586, 593 [SD NY 1990]; see also Matter of Westmoreland Coal Co. v Entech, Inc., 100 NY2d 352, 358 [2003].)
In applying these principles to the utility bill auditing agreement, the court notes that, because defendants’ counterclaim seeks only return of the $8,000 already paid as part of plaintiffs fee, and in light of the court’s ultimate determination on the question of plaintiffs alleged failure to use its “best efforts,” the court need not decide whether the “best efforts” provision in the agreement is a provision that would support an action for damages for breach, or is merely a condition to defendants’ obligation to pay a fee. (See Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106, 112-113 [1984]; Syllman v Calleo Dev. Corp., 290 AD2d 209, 211 [1st Dept 2002]; Pfizer Inc. v PCS Health Sys., 234 AD2d 18, 18-19 [1st Dept 1996].)
A cursory review of the agreement reveals that its terms were actually negotiated by the parties, resulting in the deletion or alteration of printed terms. The provision, therefore, establishing plaintiffs one-third fee “to be due immediately after receipt by Client of such credit(s) and/or adjustment(s)” reflects an alteration from the word “realization” to the word “receipt.” In the same section of the agreement, a provision for a one-third fee on “[client’s future water/sewer utility cost savings,” as defined in a paragraph on the reverse side, has been deleted, as has the paragraph on the reverse side.
It is clear, therefore, that, despite the references to “current and future utility bills” in the “best efforts” provision, *694 plaintiffs performance under that provision cannot be determined solely by defendants’ “future water/sewer utility costs savings.” There is no reason to suppose that defendants expected plaintiffs “best efforts” with respect to future savings when defendants would not be compensating plaintiff for those efforts.
It is also clear that plaintiff’s right to compensation was entirely contingent, in that “if [plaintiff] fail[ed] to obtain . . . refund(s), credit and adjustment(s) for Client, [plaintiff would] not receive any fee from Client for its services.” (See terms of utility bill auditing agreement If 11.) There is nothing in the agreement to suggest, and defendants do not contend, that the credits made to defendants’ accounts are not “savings” on which a fee must be paid. (See National Util. Serv. v Thatcher Glass Mfg. Co., 30 AD2d 168 [1st Dept 1968].)
Within this framework, and assuming that plaintiff must come forward with evidence of its “best efforts,” plaintiff has made a prima facie showing of entitlement to judgment as a matter of law for the balance of the contingent fee. Plaintiff has detailed the nature of its performance under the agreement, and that the credits made to defendants’ accounts resulted from its efforts. The agreement recognizes that “[s]witching the program(s) by which the Property is billed for its utility use” would be among the “methods” plaintiff might use in its efforts to bring about savings.
In response, defendants have attempted to create triable issues with their contentions of a “defective” meter and improper “consolidation” of accounts. Other than a conclusory invocation of the “best efforts” provision, defendants make no showing that the alleged deficiencies in plaintiffs performance constitute a lack of “best efforts.” The agreement contains no articulated criteria against which plaintiffs performance can be measured. Unlike Mr. Weiss, who is a licensed master plumber and purports to have familiarity with the DEP’s computerized accounting information (see affidavit in further support of summary judgment 1Í1Í 3-4), Mr. Thompson does not purport to have any expertise in either the related technical or financial areas, and defendants provide no affidavit from any person with such expertise.
Nonetheless, under some circumstances at least, defendants’ allegations with respect to the “defective” meter and the improper “consolidation” of accounts might constitute a lack of “best efforts” under criteria that can be implied. In the absence *695 of knowledgeable testimony as to the methods available to plaintiff in its performance of the agreement, and their potential and limitations in achieving the purpose, any implied criteria of performance may amount to little more than the “good faith” and “fair dealing” that inform, but do not exhaust, “best efforts.”
With respect to the “defective” meter, the agreement expressly contemplates inspection of the meters (see terms of utility bill auditing agreement H 4), and Mr. Weiss’s two affidavits certainly suggest the advisability, if not necessity, of meter inspection. Assuming for the moment, however, that plaintiff failed to inspect the “defective” meter or did so negligently, defendants do not satisfactorily explain the nature of the harm to their interests, so as to deprive plaintiff of its fee for the credits it, in fact, obtained. Defendants’ contention appears to be simply that, had plaintiff discovered the “defective” meter, plaintiff would have been able to obtain additional or higher credits to defendants’ accounts, i.e., a “full credit.” (See affidavit in opposition 11 8.) If, indeed, by reason of plaintiffs performance under the agreement, defendants were, in effect, deprived of a “full credit,” that performance might well fall short of “best efforts.”
But defendants make no showing that plaintiffs alleged failure to obtain a “full credit” for them in any way precluded defendants from doing so. To the contrary, defendants’ own efforts yielded an additional credit. (See affidavit in opposition 1Í 8.) And, since defendants paid nothing out-of-pocket to plaintiff to obtain the credits that plaintiff did obtain, there is no apparent loss to defendants for having to seek additional credits. To the extent, moreover, that the DEP has not yet given defendants the “full credit” they believe they deserve (see id.), there is no showing that the result would be different had plaintiff not performed as it did under the agreement.
Beyond all that, defendants do not make a sufficient showing that the meter was, in fact, “defective,” or that plaintiff’s inspection — which Mr. Weiss asserts (see affidavit in support of summary judgment 1Í 4) and which defendants present no evidence to dispute — was not conducted with the “reasonable care and competence owed generally by practitioners in the particular trade or profession” (see Milau Assoc. v North Ave. Dev. Corp., 42 NY2d at 486).
With respect to the allegation of improper “consolidation” of accounts, even with the agreement’s recognition of the possibil *696 ity of “[s] witching the program(s) by which the property is billed for its utility use,” a demonstration by defendants, through a person competent to do so, that plaintiff performed under the agreement so as to be entitled to a fee for credits against past utility bills by such a means that defendants’ future utility bills would be increased, would create triable issues as to lack of “best efforts.” But, here again, defendants’ showing falls short. There is nothing in defendants’ opposition that explains how or why the “consolidation” of accounts (disputed by plaintiff) could result in an increase in defendants’ future bills. Perhaps more importantly, there is no assertion, by a person who would have the competence to make it, that the “consolidation” in fact resulted in an increase in defendants’ bills.
In sum, even though the “best efforts” provision in the agreement may be enforced in the absence of articulated objective criteria, and even though under demonstrated circumstances performance deficiencies of the type alleged by defendants might constitute a lack of “best efforts,” defendants have failed to raise a triable issue as to a lack of “best efforts” under the circumstances shown to exist here.
Plaintiff is entitled, therefore, to payment of the $8,073.78 balance of its fee, and, to that extent, plaintiffs motion for summary judgment is granted.
Plaintiff makes no showing, however, as to its entitlement to prejudgment interest at the rate provided for in the agreement {see terms of utility bill auditing agreement 1Í 8) or to its entitlement to attorney fees pursuant to the agreement {see id. 1Í10).
Plaintiff may enter judgment against defendants for $8,073.78, with interest at the legal rate from June 16, 2003, plus costs, or may proceed to trial on its claims for interest and attorney fees pursuant to the agreement.